**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CUMBERLAND CASUALTY & SURETY COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES**<br><br>**Defendant.** | **No. 94-366C**<br>**(Judge Merow)** |

**APPENDIX**

**TABLE OF EXHIBITS:**


| Ex. #/Tab | Contents | Page Number |
|---|---|---|
| 1. | Complaint | 1 |
| 2. | Answer | 12 |
| 3. | Takeover Agreement | 19 |
| 4. | Nov. 20, 2002 Decision of the ASBCA in the AEC action | 23 |
| 5. | Cumberland's Request for a Contracting Officer's Final Decision | 32 |
| 6. | August 14, 1998 Decision of the ASBCA | 45 |
| 7. | Government's Appeal to the United States Court of Appeals for the Federal Circuit | 93 |
| 8. | Decision of the United States Court of Appeals for the Federal Circuit | 95 |
| 9. | Contracting Officer's Final Decision | 109 |
| 10. | Order Staying Cumberland Action | 119 |

| | | |
|---|---|---|
| 11. | Order Re-opening Fact Discovery | 120 |
| 12. | Contract between AEC and the Government, section § 01011, ¶ 5 | 122 |

10/7

OCT 12 1993

**DEPARTMENT OF THE NAVY**

NAVAL FACILITIES ENGINEERING COMMAND
200 STOVALL STREET
ALEXANDRIA, VA 22332-2300

4365
Ser 111F/93-111-206

OCT 7 1993

FINAL DECISION #93-2

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Cumberland Casualty & Surety Company
1501 2nd Avenue
Tampa, Florida 33605

Gentlemen:

The Commanding Officer, Southern Division, Naval Facilities Engineering Command has forwarded your claim under Contract N62467-91-C-0701, Navy and Marine Corps Reserve Center, Miami, Florida.

After review of the materials presented, the Contracting Officer makes the following findings of fact:

By letter of September 3, 1992, you submitted a claim for additional compensation in the amount of $1,046,884 and an unspecified time extension. Your claim consists of several items, each of which will be addressed separately below.

(1) UNAUTHORIZED DEPOSIT OF PROGRESS PAYMENT

You claim that the Government abused its discretion by paying AEC Corporation (ACE), the terminated prime contractor, $106,000. You claim that the Government deposited this money into an unauthorized account and that the funds were not used to pay for suppliers and/or subcontractors.

A review of the contract files shows that AEC, an 8a contractor, in order to get the required bonding, entered into an agreement with Kimmins Contracting Corporation (Kimmins), and Surety Specialist Inc. (SSI). This agreement created a project bank account for the receipt of all payments made on the contract and directed the Government to make all payments to this project account. Initially, AEC directed the Government to make contract progress payments to the Florida National Bank project bank account. AEC subsequently directed the Government to make progress payments to the Bank of America due to its proximity to the Government's disbursing office. The Bank of America was then



EXHIBIT
9

authorized to make payments to the project bank account at the Florida National Bank. A merger between the Florida National Bank and the First Union National Bank caused the project bank account number to change. The Government notified AEC to submit a letter directly to the Government disbursing office of the change in the project account number. AEC never notified the Government disbursing office of the change in the project account and did not notify the correspondent bank, Bank of America. Consequently a payment for $106,000 was made from the Government disbursing office to the correspondent bank, Bank of America. Bank of America subsequently made a wire transfer to the First Union National Bank which deposited the transfer to an AEC operating account rather than the project account. The Government was not part of the agreement which created the correspondent bank account with the Bank of America and the First Union National Bank and therefore is not responsible for the payment into an operating account of AEC.

On the basis of the foregoing, this item of your claim is denied.

(2) OVERPAYMENT TO AEC CORPORATION

You claim that the Government overpaid AEC $217,866.83 for work which was either not performed or performed incorrectly.

A review of the contract files shows that you have presented no factual information which substantiates or corroborates the $217,866.83 which you have claimed on this item.

On the basis of the foregoing, this part of your claim is denied.

(3) QUARRY TILE

You claim that the existing recessed floor slab was not completed in accordance with the plans and specifications and that you incurred additional costs and time to correct the defective work. You claim $3,151 for this work.

As the takeover contractor, Krimmins is responsible for completing all work in accordance with the plans and specifications including correcting any defective work such as the area identified to receive quarry tile. In addition you have not justified the excess costs which you are claiming on this item. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(4) INSULATION OF DESUPERHEATER LINES

You claim that the specifications do not require the gas line at the superheater to be insulated because it is not a suction line. Therefore, you contend that you are entitled to $939.26 for providing this insulation.

A review of the contract files show that Specification Section 15652, paragraph 3.2.6 "Heat Exchanger or Economizer" requires you to provide a heat exchanger or economizer that is the manufacturer's standard design and suction-liquid-line type. You submitted a nonsuction-liquid-line type unit with a desuperheater on the hot gas discharge refrigerant lines without requesting a variance from the specifications. The manufacturer of the unit which you provided, Trane, does require that the discharge lines and the water lines be insulated. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(5) COLOR CONCRETE ADMIXTURE

You claim that the specifications were ambiguous and caused you to exclude the concrete admixture prior to casting the assembly hall floor. You claim $9,056 for providing this admixture to the concrete.

A review of the contract files shows that although Naval Facilities Engineering Command (NAVFAC) Drawing 5198889, Finish Schedule does not require a color admixture in the concrete slab for the Assembly Hall, NAVFAC Drawing 5198867, North Wing Floor Plan, clearly states that a color admixture in the concrete slab for the Assembly Hall is required. Since the contract documents are to be read as a whole, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(6) HOT WATER HEATERS

You claim $3,155.92 and an unspecified number of delay days for costs associated with the change from oil fired to electric water heaters.

A review of the contract files shows that the change from oil fired to electric water heaters resulted in the elimination of excavation work for the oil storage tank, fuel oil piping, and flues for the water heaters. The Government requested the change prior to AEC or the bonding company starting any of this work. You have not presented any information substantiating the alleged increased costs or time. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(7) STAIRS

You claim $10,618 for the removal of existing concrete stairs. You contend that the Government agreed to pay you for replacement stairs if a set of stairs on the west side of the building cracked. You further contend that these west side stairs cracked and that the Government refused to pay you for the replacement stairs. Finally, you contend that you were directed to reinstall stairs without the required expansion joint.

A review of the contract files shows that AEC had incorrectly installed the stairs by not having the welded wire mesh embedded in the concrete and by not properly installing the aluminum nosing bars. The cracking occurred because AEC had not properly cured the concrete and placed expansion joint material at both ends of the stairs. The expansion joint material was not a requirement of the contract. The Government was justified in directing you to remove the existing stairs. Further, the contract files do not show that there was any agreement for the Government to pay you for the replacement of the cracked stairs. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(8) EXHAUST FAN #15

You claim that the motor for exhaust fan #15 was not compatible with the electrical wiring diagram in the electrical drawings. You claim $1,026 in additional costs for wiring the motor.

It is determined that there is merit to this portion of your claim. By copy of this letter, the Resident Officer in Charge of Construction (ROICC) is directed to enter into negotiations to determine a fair and reasonable price for this item.

(9) CONDENSATE LINES

You claim $5,738 for condensate lines at the fan coil units. You state that the contract drawings show condensate lines at other locations, but not at the fan coil units.

A review of the contract files shows that contract Specification Section 15820, "Air Handling and Distribution Equipment", Paragraph 2.2.6 Coil Sections states that "...Cooling coils shall have drain pans with piping connections to remove condensate." Contract Specification Section 15651, "Chilled Water, Condenser Water, Hot and Cold Water (Dual Service) Piping", Paragraph 3.4.2 Cooling Coil Drain Pans requires you to

"...Provide with drain connections and lines to remove the condensate collected on the cold coil surface from the air stream. The condensate shall be piped from the bottom drain pan to a disposal point outside of the coil casings and shall be trapped to insure complete pan drainage." Therefore, you were required to provide condensate lines at the fan coil units. Thus, this item of your claim is without merit.

On the basis of the foregoing, this item of your claim is denied.

(10) KEYING

You claim $3,382 in additional costs for providing an acceptable keying schedule for the building. You contend that the keying schedule referenced in the specifications cannot be accomplished and that the Government did not voice any objections to the factory keying schedule until after the lock cylinders had been installed.

A review of the contract files shows that Specification Section 08710 "Finish Hardware" paragraph 1.2.4 Keying System Submission states: "Before locks are delivered to job site, submit complete keying system to and have approved by the Contracting Officer." The Government had approved the keying system submitted by the original contractor. You resubmitted the same keying system. This reapproved key schedule could not use the cylinders which had been provided. The fact that the Government approved your keying system did not relieve you from providing a functional keying system in accordance with the original contract requirements. Therefore, this item of your claim is without merit.

On the basis of the foregoing, this item of your claim is denied.

(11) FIRE LINE LOOP REPAIR

You claim $15,525 and an unspecified number of days for repairs to the fire line loop. You contend that the Government provided three modifications to the contract for repairs but unilaterally chose to not pay for the repairs as the costs were considered excessive. You also contend that as a result of these repairs, you were required to repair asphalt, sidewalks and other areas.

A review of the contract files show that Technical Supplement C-22 to the contract specifications required you to inspect and pressure test the fire line prior to its being covered by other construction. AEC did not perform the necessary inspection of and pressure testing of the fire line prior to the completion of the paving and sidewalk work. Consequently, when the fire line was pressure tested and leaks were discovered, the line had to be

exposed to be repaired. Paving and sidewalks were destroyed in the process of completing the necessary fire line repairs. You were required to provide a functioning fire line, paving and sidewalks. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(12) GRASS SEEDING

You claim $2,432 for costs associated with reseeding and adding sod to areas on the east and west side of the building. You contend that heavy rainfall washed the grass seed away before it could germinate.

A review of the contract files shows that the areas that were to be grassed have a slope which was clearly shown on the site grading plan. Since the original seeding was to take place during the rainy season, the fact that grass seed was washed away from the sloped area because of heavy rainfall is not an unusual circumstance and should have been foreseen by the landscaping subcontractor. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(13) RECESSED FIRE EXTINGUISHER CABINETS

You claim $1,187 for the purchase of recessed fire extinguisher cabinets. You contend that actual field conditions precluded the use of recessed cabinets, that you were unable to return the recessed cabinets, and were forced to purchase new cabinets.

A review of the contract files shows that NAVFAC Drawing 5198883 details both surface mount and recessed fire extinguisher cabinets. The schedule for fire extinguishers calls for recessed cabinets in the South Wing and surface cabinets in the Assembly Hall and North Wing. NAVFAC Drawings 5198866 and 5198868, Detail 7/A-3(A)/A-18(A) shows recessed fire extinguisher cabinets. Surface mounted fire extinguisher cabinets are also shown on these two drawings. In order to determine how many recessed and surface mounted fire extinguishers were required, a quantity take-off should have been done by AEC. This was not done and the ambiguity was not clarified by AEC prior to buying the fire extinguisher cabinets. Therefore, this portion of your claim is without merit.

On the basis of the foregoing, this item of your claim is denied.

(14) DIELECTRIC UNION AT CHILLERS

You claim $945 for replacing the dielectric union at the chiller after the specified dielectric union failed. You contend that the failure of the specified dielectric union was due to a neoprene gasket which was not able to withstand the high temperature involved in the gas line.

A review of the contract files shows that the failed dielectric union was defective. Regardless of whether or not the neoprene gasket caused the failure, it is the responsibility of the contractor to provide a dielectric union which is functional and meets the requirements of contract Specification Section 15652, paragraph 5, "INSTALLATION" which states that "...Electric isolation shall be provided between dissimilar metals for the purpose of minimizing galvanic corrosion." Therefore, this portion of your claim is without merit and is therefore denied.

On the basis of the foregoing, this item of your claim is denied.

(15) FIRE DAMPERS

You claim $939 for installing two fire dampers which were not shown on the drawings.

A review of the contract file shows that contract Specification Section 3.1.2.4 "Fire Dampers" required you to "...Install fire dampers for ducts penetrating fire walls and where ducts systems serve two or more floors in accordance with UL 555." The requirement for fire dampers was not shown on the contract drawings; however, the specifications do make this requirement. Since the contract must be read as a whole, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(16) INSULATION

You claim $3,116 for providing insulation which the Government listed as being on the jobsite. You contend that the Government provided a material list which listed the insulation as being available on site.

A review of the contract files shows that contract Specification Section 01011, paragraph 34 "SITE VISITATION REQUIREMENTS" states that "...The contractor is advised that it is a requirement that he and his subcontractors visit the site of the project in order to confirm the availability, usability or serviceability of any and all materials presently at the site either incorporated in the work or in storage. Pre-bid meetings will be held at the site with the Contracting Officer in order to

review the status of work as well as to discuss and document any questions the Contractor may have regarding the work required." Further, the list which the Government provided you clearly states "...The quantities provided are based on the best information available. The Contractor is responsible for inventorying quantities of all listed material by site visitation and review of documents and for providing all items required for a complete project." It was your responsibility to verify the quantity and condition of all materials on the jobsite, including the insulation. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(17) DELAYS

You claim $224,661 for extended overhead costs due to Government delays. You base this claim item on changes in the completion schedule and the cumulative effects these changes had on the contract completion date.

A review of the contract files shows that you have not provided any information which documents that the Government caused you any delays nor have you quantified the duration of those delays. Altering the dates of activities within your completion schedule does not provide the necessary information that the Government was the cause of those date changes and any corresponding delays. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(18) OVERPAYMENTS

You claim $235,944.48 for overpayments, in addition to those alleged in claim item #2, which the Government allegedly made directly to AEC Corporation.

A review of the contract file shows that you have not provided any information to substantiate this portion of your claim. You and Kimmins were actively involved in the monitoring and inspection of the work performed during the AEC contract because Kimmins had required, as part of its agreement with AEC to secure bonding for AEC, that AEC hire an on-site manager acceptable to Kimmins. Throughout the AEC contract the Kimmins approved manager helped coordinate the work and prepare invoices for progress payments. Therefore, you and Kimmins were not precluded from identifying deficiencies incurred by AEC. Therefore, this claim item is without merit.

On the basis of the foregoing, this item of your claim is denied.

(19) LIQUIDATED DAMAGES

You claim the balance of the contract $419,068.42. You state that the Government is improperly withholding liquidated damages and that this money should be paid to you.

A review of the contract file shows that the contract completion date was July 19, 1991. The building was beneficially occupied on October 9, 1991 or 219 days late. Insofar as you have not established entitlement to a time extension, this item of your claim is denied.

On the basis of the foregoing, with the exception of claim item #8, your claim is denied in its entirety. Further, it is determined that you owe the Government $65,322.58, computed as follows:

| | |
|---|---|
| Contract Balance at Termination | $671,044.42 |
| Contract Balance at A0000I | 668,453.42 |
| Progress Payment 8/91 | 251,976.00 |
| Current Contract Balance | $416,477.42 |

| | |
|---|---|
| Current Contract Balance | $416,477.42 |
| Liquidated damages for delays in completing construction: ($2,200/day x 219 days) | (481,000.00) |
| | $( 65,322.58) |

Accordingly, demand is made upon you for payment in the amount of $65,322.58. You are further advised that, pursuant to the clause of your contract entitled "Interest," unless the sum of $65,322.58 is paid within 30 days, said sum shall bear interest from the date due until paid. The interest rate per annum shall be the interest rate in effect on the date of this letter which has been established by the Secretary of the Treasury, pursuant to Public Law 92-41. Please remit payment in the amount due, payable to "Naval Facilities Engineering Command," to the following address:

Commander
Naval Facilities Engineering Command
200 Stovall Street
Alexandria, VA 22332-2300

This is a Final Decision of the Contracting Officer. This Decision may be appealed to the Armed Services Board of Contract Appeals, which is the authorized representative of the Secretary for hearing and determining such disputes. If you decide to make such an appeal from this decision, written notice must be mailed or otherwise furnished to the Armed Services Board of Contract Appeals, ASBCA, Skyline Six, 5109 Leesburg Pike, 7th Floor, Falls Church, Virginia 22041, within ninety days from the date you receive this decision. A copy of the written notice shall be

furnished to the Contracting Officer from whose decision the appeal is taken, at the address set forth at the head of this letter, Attention: Director, Contract Division. The notice should indicate that an appeal is intended, should reference this decision, identify the contract by number, and state the amount in dispute. The rules of procedure of the Armed Services Board of Contract Appeals are set forth in the Department of Defense Federal Acquisition Regulation Supplement, Appendix A, Part Two. The Optional Accelerate Procedure of the Board is available in appeals involving $50,000 or less and the Small Claims (Expedited) Procedure is available in appeals involving $10,000 or less. In lieu of appealing to the cognizant Board of Contract Appeals, you may bring action directly in the U. S. Claims Court* within 12 months of the date you receive this decision. (*Except as provided in Section 4 of the Act (Maritime Contract)).

Sincerely,

WILLIAM C. TIMPERLEY
Director, Contracts
Policy Division

Copy to:
SOUTHNAVFACENGCOM (Attn: 0213)
OGC
NFCTC

# In the United States Court of Federal Claims

No. 94-366C

(FILED: July 7, 1997)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CUMBERLAND CASUALTY & SURETY COMPANY,**

*Plaintiff,*

v.

**THE UNITED STATES,**

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## *ORDER*

The parties' joint motion for a stay of proceedings, filed July 3, 1997, is ALLOWED. The parties are to begin filing monthly joint status report August 7, 1997.

IT IS SO ORDERED.

M. R. Tidwell

MOODY R. TIDWELL
Judge



EXHIBIT 10

Pldgs. Docket 8/7 for monthly status report; cc. EAmackowiak, RGwzan

# In the United States Court of Federal Claims

No. 94-366 C
(Filed February 23, 2004)

| | |
|---|---|
| CUMBERLAND CASUALTY & SURETY COMPANY | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

## ORDER

This Order addresses the responses filed to the Order of November 20, 2003, and Defendant's Motion to Reopen Fact Discovery, filed December 23, 2003. No response to defendant's motion has been filed, but Plaintiff's Status Report, filed December 23, 2003, does state that plaintiff "adamantly opposes Defendant's eleventh-hour request to re-open discovery that was completed in 1995."

It must be recognized that, following the decision in *Danzig v. AEC Corporation*, 224 F.3d 1333 (Fed. Cir. 2000), the issues to be litigated differ from those present in 1995. It is not clear from defendant's motion to reopen fact discovery exactly what discovery is contemplated, but the change in the posture of the case supports providing a brief additional discovery period.

Accordingly, it is **ORDERED**:

(1) That the pretrial activity concerning damages sought together with exchanged scheduling and audit verifications, as set forth in the November 20, 2003 Order shall be completed by April 16, 2004, which requires that plaintiff submit schedules to defendant by March 16, 2004;



EXHIBIT
11

(2) That during the period up to April 16, 2004, additional fact discovery may also be initiated;

(3) Expert witnesses shall be identified on or before April 25, 2004 together with the information called for by RCFC 26(a)(2)(B) and expert discovery shall be completed by May 24, 2004;

(4) At the close of all discovery on May 24, 2004, counsel shall file a status report(s) proposing a schedule(s) for further activity in this matter and it is contemplated that a conference, if required, will then be promptly scheduled pursuant to ¶ 11, Appendix A or a scheduling order entered.

James F. Merow
Senior Judge

# SECTION 01011

## GENERAL PARAGRAPHS

1 GENERAL INTENTION: It is the declared and acknowledged intention and meaning to provide and secure a Reserve Training Center, Miami, Florida, complete and ready for use.

2 GENERAL DESCRIPTION: The work includes completion of partially constructed two-story Training Building of approximately 55,000 square feet floor area, a Vehicle Maintenance Training Facility (VMTF) of approximately 5,800 square feet floor area and site improvements and ammenities.

2.1 Minor Materials and Work: Minor materials and work not specifically mentioned herein but necessary for the proper completion of the work shall be furnished without additional cost to the Government.

2.2 Unforeseen Major Repairs: Should deteriorated material of a major nature be uncovered in the course of the work, it shall be brought to the attention of the Contracting Officer. Repairs shall be made as directed, and an adjustment will be made in the contract price in accordance with the terms of the contract.

2.3 Quantities: Where painting and the replacement of deteriorated or missing materials are required and approximate quantities given, the Contractor shall perform all the required work. Where the quantities for bidding purposes are specified or indicated, bids shall be based on the stated quantity; should more or less than the stated quantities be required, the contract price will be adjusted in accordance with the clause "Changes" of the Contract Clauses. Replacement of deteriorated materials shall be at such location and of such extent as directed.

3 LOCATION: The work shall be located at Dade County, Florida, at the site indicated on the drawings. The exact location will be indicated by the Contracting Officer.





EXHIBIT
12

4 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK: The Contractor will be required to commence work under the contract within 40 calendar days after the date of Award, to prosecute the work diligently, and to complete the entire work ready for use within 485 calendar days. The time stated for completion shall include final cleanup of the premises. The contract completion date will be computed starting 15 calendar days after the date of Award. This 15-day period is to allow for mailing of the Award and the Contractor's submission of required Bonds. The Contractor will not be allowed to commence work at the site until acceptable Payment and Performance Bonds are received and a Notice to Proceed has been issued. The contract time for purposes of fixing the completion date, default and liquidated damages shall be assessed beginning 15 days from the date of Award, regardless of when the Payment and Performance Bonds have been executed, received and accepted. Any delay in issuance of the Notice to Proceed as a result of the Contractor's failure to submit the required Payment and Performance Bonds within the time specified will not be a cause for extension of the contract completion date.

5 LIQUIDATED DAMAGES - CONSTRUCTION (APR 1984): If the Contractor fails to complete the work within the time specified in the contract, or any extension, the Contractor shall pay to the Government as liquidated damages, the sum of $2,200 for each calendar day of delay.

5.1 Termination: If the Government terminates the Contractor's right to proceed, the resulting damage will consist of liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned the Government in completing the work.

5.2 Non-Termination: If the Government does not terminate the Contractor's right to proceed, the resulting damage will consist of liquidated damages until the work is completed or accepted. (FAR 52.212-5).

6 ORDER OF WORK: The work shall be executed in a manner and at such times so as to expedite its completion.

7 DRAWINGS ACCOMPANYING SPECIFICATIONS: The following drawings accompany this specification and are a part thereof. Drawings are the property of the Government, and shall not be used for any purpose other than that contemplated by the specification. The drawings included with this specification are full size. After Award, five copies of the contract specification, five sets of drawings and one set of full-size reproducible drawings will be furnished to the Contractor without charge.

| NAVFAC DRAWING NO. | TITLE |
|---|---|
| 5198847 | Title & Index |
| 5198848 | Site Demolition Plan |
| 5198849 | Soil Borings & Slugs Tests |
| 5198850 | Soil Boring Logs |
| 5198851 | Site Layout Plan |
| 5198852 | Site Grading Plan |
| 5198853 | Pavement Plan |
| 5198854 | Grease Rack Details |
| 5198855 | Fence & Drainage Details |
| 5198856 | Site Construction Details |
| 5198857 | Site Utilities Plan & Details |
| 5198858 | Irrigation Plan |
| 5198859 | Fuel Facilities |
| 5198860 | Water & Sewer Details |
| 5198861 | Miscellaneous Details |
| 5198862 | Irrigation & Signage Details |
| 5198863 | Partial Topographic Boundary Survey |
| 5198864 | Landscape Plan |
| 5198865 | Landscape Details |
| 5198866 | Training Bldg. S. Wind Gnd. Flr. Plan |
| 5198867 | Training Bldg. N. Wing Flr. Plan |
| 5198868 | Training Blvd. S. wing 2nd Flr. Plan |
| 5198869 | Elevations |
| 5198870 | Elevations |
| 5198871 | Training Bldg. Roof Plan & Details |
| 5198872 | Training Bldg. S. Wing Gnd. Flr. Refld. Clg. |
| 5198873 | Training Bldg. N. Wing Relfd. Clg. |
| 5198874 | Training Bldg. N. Wind 2nd Flr. Refld. Clg. |

| | |
|---|---|
| 5198875 | Toilet Plans & Elevations |
| 5198876 | Stair Plans, Elevations & Details |
| 5198877 | Counter Plans, Elevations & Details |
| 5198878 | Building Sections |
| 5198879 | Wall Sections & Details |
| 5198880 | Wall Sections |
| 5198881 | Details |
| 5198882 | Miscellaneous Details |
| 5198883 | Miscellaneous Details |
| 5198884 | Miscellaneous Details |
| 5198885 | Door Schedule |
| 5198886 | Door & Frame Elevations |
| 5198887 | Door & Window Wall Details |
| 5198888 | Window & Louver Details |
| 5198889 | Finish Schedule |
| 5198890 | Finish Schedule, Abbreviations, Symbols |
| 5198891 | V.M.T.F. Flr. Plan & Reflected Ceiling Plan |
| 5198892 | V.M.T.F. Sections & Elevations |
| 5198893 | V.M.T.F. Wall Sections & Roof Plan |
| 5198894 | Roof Details |
| 5198895 | Miscellaneous Details |
| 5198896 | Training Bldg. Vibroflotation Plan S. Wing |
| 5198897 | Training Bldg. Gnd. Flr. & Fdn. Plan S. Wing |
| 5198898 | Training Bldg. Gnd. Flr. & Fdn. Plan N. Wing |
| 5198899 | Training Bldg. 2nd Flr. Plan S. Wing |
| 5198900 | Training Bldg. Roof Plan N. Wing |
| 5198901 | Training Bldg. Roof Plan S. Wing |
| 5198902 | Beam, Column & Footing Schedules |
| 5198903 | Building Sections South Wing |
| 5198904 | Building Sections South Wing |
| 5198905 | Stair Sections |
| 5198906 | Building Sections North Wing |
| 5198907 | Building Sections North Wing |
| 5198908 | Steel Truss Details |
| 5198909 | Steel Truss Details |
| 5198910 | Steel Truss Details |
| 5198911 | Beam Elevations & Schedules |
| 5198912 | V.M.T.F. Plans & Schedules |
| 5198913 | V.M.T.F. Building Sections & Details |

06-88-0646
01011-4

| | |
|---|---|
| 5198914 | Navy Damage Cont. Sym. - Plans & Sections |
| 5198915 | Details |
| 5198916 | Training Bldg. S. Wing Gnd. Flr. HVAC Plan |
| 5198917 | Training Bldg. N. Wing HVAC Plan |
| 5198918 | Training Bldg. S. Wing 2nd Flr. HVAC Plan |
| 5198919 | V.M.T.F. H.V.A.C. Plan |
| 5198920 | Mechanical Rooms & Sections |
| 5198921 | Mechanical Rooms, Sections & Details |
| 5198922 | Schedules & Controls |
| 5198923 | Control Diagrams |
| 5198924 | Control Diagrams |
| 5198925 | Training Bldg. S. Wing Gnd. Flr. Plmb. Plan |
| 5198926 | Training Bldg. N. Wing Plmb. Plan |
| 5198927 | Training Bldg. S. Wing 2nd Flr. Plmb. Plan |
| 5198928 | V.M.T.F. Bldg. Plmb. Plan |
| 5198929 | Water Riser Diagram |
| 5198930 | Sanitary Riser Diagram |
| 5198931 | Details |
| 5198932 | Electrical Site Plan |
| 5198933 | Training Bldg. S. Wing Gnd. Flr. Lightg. Plan |
| 5198934 | Training Bldg. N. Wing Lighting Plan |
| 5198935 | Training Bldg. S. Wing 2nd Flr. Lighting Plan |
| 5198936 | Training Bldg. S. Wing Gnd. Flr. Power Plan |
| 5198937 | Training Bldg. N. Wing Power Plan |
| 5198938 | Training Bldg. S. Wing 2nd Flr. Power Plan |
| 5198939 | V.M.T.F. Lighting Plan |
| 5198940 | V.M.T.F. Power Plan |
| 5198941 | Electrical Riser Diagram |
| 5198942 | Fire Alarm & Telephone Riser Diagram |
| 5198943 | Panel Schedules |
| 5198944 | Panel Schedules |
| 5198945 | Panel Schedules |
| 5198946 | Panel Schdules & Details |
| 5198947 | Lighting Fixture Details |
| 5198948 | Lighting Fixture Details |
| 5198949 | Single Line Diagram |

06-88-0646
01011-5

7.1 Omissions: Omissions from the drawings or specifications or the misdescription of details of work which are manifestly necessary to carry out the intent of the drawings and specifications, or which are customarily performed, shall not relieve the Contractor from performing such omitted or misdescribed details of the work, but they shall be performed as if fully and correctly set forth and described in the drawings and specifications.

7.2 Notification of Discrepancies: The Contractor shall check all drawings furnished him immediately upon their receipt and shall promptly notify the Contracting Officer of any discrepancies. Figures marked on drawings shall in general be followed in preference to scale measurements. Large scale drawings shall in general govern over small scale drawings. The Contractor shall compare all drawings and verify the figures before laying out the work and will be responsible for any errors which might have been avoided thereby.

8 GOVERNMENT REPRESENTATIVES: The work will be under the general direction of an officer of the Civil Engineer Corps, United States Navy, or other officer or representative of the Government, as Officer in Charge of Construciton, referred to as the "OICC" or "Contracting Officer" and designated in block 26 of Standard Form 1442. Except in connection with the "Disputes" clause of the Contract Clauses, the Officer in Charge of Construction shall be the authorized representative of the Contracting Officer, and have complete charge of the work and exercise full supervision of the work, so far as it affects the interest of the Government. For the purposes of the "Disputes" clause, "Contracting Officer" shall mean the Commander, Naval Facilities Engineering Command, the Acting Commander, their successors, or their representatives specially designated for this purpose. The provisions of this paragraph or elsewhere in this contract regarding supervision, approval or direction by the Contracting Officer or the OICC, or action taken pursuant thereto, are not intended to and shall not relieve the Contractor of responsibility for the accomplishment of the work either as regards sufficiency or the time of performance, except as expressly otherwise provided herein.

9 ORAL MODIFICATION: No oral statement of any person other than the Contracting Officer or his representative, as provided in the clause entitled "Changes" of the Contract Clauses, shall in any manner or degree modify or otherwise affect the terms of this contract.

10 NO WAIVER BY GOVERNMENT: The failure of the Government to insist upon the strict performance of any one or more of the terms of this contract or to exercise any options contained herein, shall not be construed as a waiver or relinquishment of the right to assert or rely upon such strict performance or option on any future occasion.

11 OMITTED.

12 GOVERNMENT-FURNISHED MATERIALS AND EQUIPMENT: The Government will furnish the material and equipment scheduled on the drawings as "GFCI" for installation by the Contractor, in accordance with clause entitled "Government-Furnished Property (Short Form)" of the Contract Clauses. The materials and equipment will be delivered to the project site by the Government. Government-furnished equipment shall be uncrated by the Contractor in the presence of the Contracting Officer's Representative to determine any damage or missing parts. The Contractor shall notify the Contracting Officer in writing at least 14 days in advance of the date the Government-furnished material or equipment will be needed.

13 UTILITIES FOR CONSTRUCTION AND TESTING: The Contractor shall be responsible for obtaining, either from available Government sources or local utility companies, all utilities required for construction and testing. The Contractor shall provide these utilities at his expense, paid for at the current rate delivered to the job site. The Contractor shall provide and maintain all temporary utility connections and distribution lines, and all meters required to measure the amount of each utility used.

14 SCHEDULE OF PRICES: Within 5 days of receipt of the proper forms, the Contractor shall prepare and submit to the Contracting Officer a Schedule of Prices. The Schedule

of Prices shall consist of a detailed breakdown of the contract price, giving the quantities for each of the various kinds of work, the unit prices, and the total prices therefor. The format, content, and number of copies required will be prescribed by the Contracting Officer and subject to his approval. The submission of the required data shall not otherwise affect the contract terms.

15 INVOICING INSTRUCTIONS: Requests for payment in accordance with the terms of the contract shall consist of:

a. Contractor's Invoice on the form furnished for this purpose, which shall show, in summary form, the basis for arriving at the amount of the invoice; and

b. Payment Breakdown on an acceptable form, which shall show, in detail, the estimated cost percentage of completion and value of completed construction. The format, content, and number or copies required will be prescribed by the Contracting Officer and subject to his approval. The submission of the required data shall not otherwise affect the contract terms.

16 PAYMENTS TO CONTRACTOR:

a. Payments made in accordance with the clause entitled "Payments Under Fixed-Price Construction Contract" of the Contract Clauses will be made on submission of itemized requests by the Contractor and shall be subject to reduction for overpayments or increase for underpayments on preceding payments to the Contractor.

b. The obligation of the Government to make any of the payments required under any of the provisions of this contract shall, in the discretion of the Contracting Officer, be subject to (1) reasonable deductions on account of defects in material or workmanship, and (2) any claims which the Government may have against the Contractor under or in connection with this contract. Any overpayments to the Contractor shall, unless otherwise adjusted, by repaid to the Government upon demand.

16.1 Payment for Offsite Material: The Government will make every effort to review and process Contractor payment requests in an expeditious nature, thereby assuring earliest possible payment under the contract terms and provisions. The Government will make progress payments for this work on a monthly basis, subject to suitable arrangements for the submission of payment requests being agreed to between the Contractor and the Government. Payment will be made for material delivered on the site subject to the conditions set forth in subparagraph (b) of clause entitled "Payments Under Fixed-Price Construction Contracts" of the Contract Clauses. Payments may also be made for materials stored off construction sites, upon specific request from the Contractor. As a condition precedent to such payments, the Contracting Officer must be satisfied that:

a. The materials are stored in reasonable proximity to the construction site, so that transportation and attendant hazards are minimized.

b. The Contractor demonstrates clear title (Paid invoices) to such material.

c. The materials for which progress payments are requested are adequately insured and protected from theft and the elements through appropriate security measures.

d. The materials for which progress payments are requested are not susceptible to deterioration or physical damage in storage or in transit to the job site (e.g., items such as steel, machinery, pipe, and fittings, electrical cable, and the like, would be acceptable for progress payments; items such as sheetrock, glass, insulation, wall coverings, and the like, would not).

e. Payments will not be made for materials in transit.

17 PROGRESS CHARTS AND EQUIPMENT DELIVERY SCHEDULE:

17.1 Progress Charts: The Contractor shall, within 15 days after receipt of Award, prepare and submit to the Contracting Officer for approval a practicable construciton schedule in accordance with clause entitled "Schedules for Construction Contracts" of the Contract Clauses except as modified herein. The schedule shall be in the form of a progress chart on Form 6ND-SOUTHDIV-4355-1. The Contractor shall maintain current with each submittal, at least the following information:

a. The various classes and areas of work, broken down into:

(1) Times projected for submittals, approvals, and procurement;

(2) Times for installation and erection;

(3) Times for testing and inspection.

b. The work completed and the work remaining to be done to complete the project.

c. Any items of work which will delay the start or completion of other major items of work so as to delay completion of the whole project.

17.2 Equipment Delivery Schedule: The Contractor shall, within 90 days after date of award, submit to the Contracting Officer for approval, a schedule showing the procurement plans for materials, plant and equipment. The data shall be submitted in the format prescribed by the Contracting Officer and shall include but not be limited to the following information:

a. Description.

b. Date of purchse order.

c. Promised shipping date.

d. Name of manufacturer or supplier.

e. Date delivery is expected.

f. Date material or equipment is required according to current progress schedule or network.

The Contractor shall update the progress chart and equipment delivery schedule at monthly intervals or at intervals directed by the Contracting Officer. The revised documents shall reflect any changes occuring since the last updating. The Contractor shall also submit copies of purchase orders and confirmation of delivery dates as directed by the Contracting Officer. Updated progress charts and equipment schedules shall be submitted with each invoice for progress payment (See clause entitled "Schedules for Construction Contracts" of the Contract Clauses).

17.3 Network System: Optionally, the Contractor may use the "CPM" (Critical Path Method), the "PERT" (Program Evaluation and Reporting Technique), or, subject to approval of the Contracting Officer, some other system which will give similar and equal information and control to that provided by the named systems, in lieu of the progress charts specified above. The use of one of these methods shall be subject to the terms of clause entitled "Schedules for Construction Contracts" of the Contract Clauses.

18 SANITATION: Adeuqate sanitary conveniences of a type approved for the use of persons employed on the work, shall be constructed, properly secluded from public observation, and maintained by the Contractor in such a manner as required or approved by the Contracting Officer. These conveniences shall be maintained at all times without nuisance. Upon completion of the work they shall be removed from the premises, leaving the premises clean and free from nuisance. Refer to section "ENVIRONMENTAL PROTECTION" for additional requirements.

19 EXISTING WORK: The disassembling, disconnecting, cutting, removal or altering in any way of existing work shall be carried on in such a manner as to prevent injury or damage to all portions of existing work, whether they are to remain in place, to be re-used in the new work, or to be salvaged and stored. Where existing work is changed or removed, or where new work adjoins, connects to or abuts existing work, the existing work shall be altered as necessary and connected in a substantial and workmanlike manner. All new work shall match, as nearly as practicable

the existing adjoining and/or adjacent similar work. Operations affecting existing work shall be conducted with care not to damage work in place; and all existing work damaged by such operations shall be restored to its original condition or replaced with new without additional expense to the Government.

20 MATERIALS AND EQUIPMENT TO BE SALVAGED: All existing materials and equipment which are required to be removed or disconnected to perform the work, but are not indicated or specified for use in the new work, shall become the property of the Contractor and shall be removed from Government property.

20.1 Collateral Equipment and Furnishings: Except where indicated or specified otherwise, all existing collateral equipment (including desks chairs, file cabinets and other furniture and furnishings) the buildings and elsewhere on the site of work, shall remain the property of the Government. The Government will remove and relocate all such equipment and furnishings as necessary for the Contractor to perform his work. The Contractor shall coordinate his work, and cooperate with the Contracting Officer, in the disposition of these items.

21 GOVERNMENT CONSTRUCTION REPRESENTATIVE'S OFFICE: The Contractor shall provide not less than 190 square feet of office space for use by Government personnel. The space shall be in a weathertight building and shall be provided with adequate heating and cooling, toilet facilities, light, and ventilation. This shall include a 1,500-watt (minimum) radiant heater and a window type air conditioner rated at 9,000 BTU minimum, or a window-mounted heat pump of the same minimum heating and cooling ratings. The door shall be provided with a cylinder lock and the windows with locking hardware. The office shall contain two plans tables, 4 feet by 8 feet, suitable for examination of drawings. All utilities shall be furnished by the Contractor. At the Contractor's option, a trailer or a Contractor's onsite office of equivalent space, facilities and furnishings may be provided in lieu of the office specified above. The office shall remain the property of the Contractor and on completion and acceptance of the work shall be removed from Government property.

22 CONSTRUCTION SIGN: Not required.

23 SECURITY REQUIREMENTS: Shall be in accordance with clause entitled "Security Requirements" of the Contract Clauses. No employee or representative of the Contractor will be admitted to the site of the work unless he furnishes satisfactory proof that he is a citizen of the United States or is specifically authorized admittance to the site of the work by the Contracting Officer.

24 SAFETY REQUIREMENTS: A copy of the Department of the Army Corps of Engineers, "Safety and Health Requirements Manual", referenced in clause entitled "Accident Prevention" of the Contract Clauses, may be examined at the office where bids are received. (Copies of this publication may be obtained upon application, accompanied by money order, coupon, or cash to the Superintendent of Documents, Governmkent Printing Office, Washington, DC 20401). Prior to commencement of the work, the Contractor shall meet in conference with representatives of the Contracting Officer to discuss and develop mutual understandings relative to administration of the safety program.

25 WORK OUTSIDE REGULAR HOURS: If the Contractor desires to carry on work outside regular hours or on Saturdays, Sundays, or holidays, he shall submit an application to the Contracting Officer. The Contractor shall allow ample time to enable satisfactory arrangements to be made by the Government for inspecting the work in progress. At night, he shall light the different parts of the work in an approved manner. All utility cutovers shall be made after normal working hours or on weekends. Anticipated costs shall be included in the bid.

26 OPTIONAL REQUIREMENTS: Where a choice of materials and/or methods is permitted herein, the Contractor will be given the right to exercise the option unless stated specifically otherwise.

27 WARRANTIES: The Contractor shall provide the following prior to completion of the contract:

a. Posted Warranty Information: Provide all warranty data concerning the standard one-year warranty, including the warranty period (dates), and warranty contacts with names, addresses and telephone numbers. This data shall be posted, under glass, at a location as directed by the Contracting Officer.

b. Warranty Notebook: Provide a notebook (indexed and bound) containing manufcturer/supplier warranty documents for all equipment/products that have extended warranties (warranty periods exceeding the standard one-year warranty).

c. Warranty Tags: Provide tags on all equipment/products that have extended warranties (those items included in notebook described above). Tags shall include the following information:

EQUIPMENT/PRODUCT EXTENDED WARRANTY TAG

Type of Equipment/Product ____________
Warranty Period ____________ From_____ To______
Contract No. N62467-88-C-0646

Construction Contractor:

Name ____________
Address ____________
Telephone ____________

Warranty Contact:

Name ____________
Address ____________
Telephone ____________

28 REQUIRED INSURANCE: The Contractor shall procure and maintain during the entire period of performance under this contract the following minimum insurance coverage.

a. Comprehensive General Liability: $500,000 per occurrence.

06-88-0646
01011-14

b. Automobile Liability: $200,000 per person, $500,0000 per occurrence, $20,000 per occurrence for property damage.

c. Workmen's Compensation: As required by Federal and State worker's compensation and occupational disease statues.

d. Employer's liability coverage: $100,000 except in states where worker's compensation may not be written by private carriers.

e. Other as required by state law.

28.1 Statement of Insurance: Prior to commencement of work, the Contractor shall furnish to the Contracting Officer a certificate or written statement of the above required insurance. The policies evidencing required insurance shall contain an endorsement to the effect that cancellation or any material change in the policies adversely affecting the interests of the Government in such insurance shall not be effective for such period as may be prescribed by the laws of the State in which this contract is to be performed and in no event less than 30 days after written notice thereof to the Contracting Officer.

28.2 Subcontractors: The Contractor agrees to insert the substance of this clause, including this subparagraph, in all subcontracts hereunder.

29 EQUITABLE ADJUSTMENTS - WAIVER AND RELEASE OF CLAIMS: Whenever the Contractor submits a claim for equitable adjustments under any clause of this contract which provides for equitable adjustment of the contract, such claim shall include all types of adjustments in the total amounts to which the clause entitles the Contractor, including, but not limited to, adjustments arising out of delays or disruptions or both caused by such change. Except as the parties may otherwise expressly agree, the Contractor shall have waived (1) any adjustments otherwise entitled under the clause where such claim fails to request such adjustments, and (2) any increase in the amount of equitable adjustments additional to those requested in the claim.

29.1 Contractor's Release: The Contractor agrees that, if required by the Contracting Officer, he will execute a release, in form and substance satisfactory to the Contracting Officer, as part of the modification setting forth the aforesaid equitable adjustment. The Contractor further agrees that such release shall discharge the Government, its officers, agents and employees, from any further claims, including, but not limited to, further claims arising out of delays or disruptions or both caused by the aforesaid change.

30 CHANGES BOARD AND ESTIMATE: In determining any equitable adjustment under the Changes Clause of the Contract Clauses, the Contracting Officer shall, in those instances where the adjustment is estimated by the Contracting Officer to be $50,000 or more, convene and give full consideration to the report of an advisory board of three members, consisting of two Government representatives appointed by the Contracting Officer and one representative appointed by the Contractor. This board shall report to the Contracting Officer the amount of the change in cost, time, or both, resulting from the ordered change. In making all equitable adjustments under the clause entitled "Changes" of the Contract Clauses, compensation for additions will be based upon estimated costs at the time the work is performed and credit for deductions will be based upon estimated costs at the time the contract was made. In arriving at the amount of the change in price, if any, allowance may be made for profit, overhead and general expenses, plant rental, and other similar items.

31 DAMAGES FOR DELAY - DEFENSE PRIORITIES AND ALLOCATIONS SYSTEM: The Government will take no action pursuant to the clause entitled "DEFAULT (FIXED-PRICE CONSTRUCTION)" of the Contract Clauses to terminate the right of the Contractor to proceed or to assess liquidated or actual damages where failure of the Contractor to complete the work within the time specified is due solely to the operation of the operation of the defense Priorities and Allocations System (15 CFR 350) regulation, provided the Contractor and his subcontractor comply with the provisions of this System and the Contractor's lateness in completion of the work is not otherwise caused by the fault or negligence of the Contractor. Such delays will be excusable within the meaning of the above referenced clause and the Contractor will be entitled to a time extension by reason thereof.

32 PRIORITIES, ALLOCATIONS AND ALLOTMENTS: The Contractor shall follow the provisions of the Defense Priorities and Allocations System (DPAS) regulation (15 CRF 350) and all other applicable regulations and orders of the Office of Industrial Resource Administration, Department of Commerce, in obtaining controlled materials and other products and materials needed to complete this contract.

33 SUBCONTRACTORS: Within seven days after the award of any subcontract either by himself or a subcontractor, the Contractor shall deliver to the Contracting Officer a completed Standard Form 1413. The form shall include the subcontractor's acknowledgement of the inclusion in his subcontract of the Contract Clauses of this contract entitled "Davis-Bacon Act," "Contract Work Hours and Safety Standards Act - Overtime Compensation," "Apprentices and Trainees," "Payrolls and Basic Records," "Compliance with Copeland Act Regulations," "Withholding," "Subcontracts," "Contract Termination - Debarment," "Disputes Concerning Labor Standards," "Compliance with Davis-Bacon and Related Acts Requirements," and "Certification of Eligibility." Nothing contained in this contract shall create any contractual relation between the subcontractor and the Government.

34 SITE VISITATION REQUIREMENTS: The Contractor is advised that it is a requirement that he and his subcontractors visit the site of the project in order to confirm the availability, usability or serviceability of any and all materials presently at the site either incorporated in the work or in storage. Pre-bid meetings will be held at the site with the Contracting Officer in order to review the status of work as well as to discuss and document any questions the Contractor may have regarding the work required.

35 NAVAL PUBLIC WORKS FACILITY (NPWF): The Contractor is responsible for transportation to the site of all materials stored at the NPWF. Coordination and general information may be obtained by contacting Lt. John D. Rice at (305) 247-7600. Advanced notice for material removal is required.

*** END OF SECTION ***

# SECTION 01012

## ADDITIONAL GENERAL PARAGRAPHS

1 RECORD DRAWINGS: The Contractor shall maintain at the jobsite two sets of full-size prints of the contract drawings, accurately marked in red with adequate dimensions, to show all variations between the construction actually provided under this contract and that indicated or specified in the contract documents, including buried or concealed construction. Record drawings shall contain all work covered by this contract as well as all work already in place which is visible. Contractor will not be required to excavate or otherwise uncover concealed work completed under the previous contract unless specifically indicated otherwise. Special attention shall be given to recording the horizontal and vertical location of all buried utilities that differ from the contract drawings. Existing utility lines and features revealed during the course of construction, shall also be accurately located and dimensioned. Variations in the interior utility systems shall be clearly defined and dimensioned; and coordinated with exterior utility connections at the building five-foot line, where applicable. Existing topographical features which differ from those shown on the contract drawings shall also be accurately located and recorded. Where a choice of materials or methods is permitted herein, or where variations in scope or character of work from that of the original contract are authorized, the drawings shall be marked to define the construction actually provided. The representations of such changes shall conform to standard drafting practice and shall include such supplementary notes, legends, and details as necessary to clearly portray the as-built construction. These drawings shall be available for review by the Contracting Officer at all times. Upon completion of the work, both sets of the marked-up prints shall be certified as correct, signed by the Contractor, and delivered to the Contracting Officer for his approval before acceptance. Requests for partial payments will not be approved if the marked-up prints are not kept current, and requst for final payment will not be approved until the marked-up prints are delivered to the Contracting Officer.

2 AS-BUILT RECORD OF MATERIALS USED IN BUILDINGS: Prior to completion of the contract, the Contractor shall furnish an "as-built" record of materials used in the construction. Submission of this data is a condition for final payment under the contract. Where several manufacturers' brands, types, or classes of the item listed have been used in the project, the specific areas where each item was used shall be designed. Designations shall be keyed to the areas and spaces depicted on the contract drawings. The record shall be furnished in the following format:

| MATERIAL | SPEC DESIGNATION | MANUFACTURER | MATERIAL USED (MFR. DESIG.) | WHERE USED |
|---|---|---|---|---|
| ________ | ________ | ________ | ________ | ________ |
| ________ | ________ | ________ | ________ | ________ |

3 SUBCONTRACTORS AND PERSONNEL: Promptly after award of the contract, the Contractor shall submit to the Contracting Officer, in triplicate, a list of his subcontractors and the work each is to perform. The list shall include the names of the key personnel of the Contractor and subcontractors, together with their home addresses and telephone numbers, for use in event of any emergency. As changes occur and additional information becomes available, the Contractor shall amplify, correct, and change the information contained in previous lists.

4 DRUG ABUSE BY CONTRACT EMPLOYEES: It has been determined that the illegal possession and use of drugs and paraphernalia by civilian and contract employees in the military setting contributes directly to widespread military drug abuse and undermines command efforts to eliminate drug abuse among military personnel. Every effort will be made to deter and detect drug offenses by civilian and contract employees on military installations. Measures to be taken to identify drug offenses on military installations, and to prevent introduction of illegal drugs and paraphernalia include routine, random inspections of vehicles on entry or exit, with drug detection dog teams, when available; and random inspection of personal possessions on entry or exit. Where there is probable cause to believe that a civilian or contract employee on a military installation has been engaged in use, possession or trafficking of drugs, that

employee may be restricted or detained for the period necessary until the employee can be removed from the instalaltion or can be turned over to local enforcement authorities having jurisdiction, when appropriate. In any event, civilians or contract employees suspected of committing a drug offense on a military installation may be removed therefrom at the earliest opportunity. When illegal drugs are discovered in the course of an inspection or search of a vehicle operated by a civilian or contract employee, the employee and vehicle may be detained for a reasonable period of time necessary to turn the employee and the vehicle over to appropritae civil law enforcement officials, and action may be taken to suspend, revoke or deny installation driving privileges. Implicit with the acceptance of this contract is the Contractor's agreement to comply with all federal statutes, laws and regulations, including those regulations issued by the Commander of the military installation. Refer to clause entitled "MATERIAL AND WORKMANSHIP" of the Contract Clauses and paragraph entitled "STATION REGULATIONS" of Section "General Paragraphs".

5 STORM PROTECTION: Should warnings of wind of gale force or stronger be issued, the Contractor shall take every practicable precaution to minimize danger to persons, to the work, and to adjacent property. These precautions shall include closing all openings, removing all loose materials, tools and equipment from exposed locations, and removing or securing scaffolding and other temporary work.

6 SECUREMENT OF TRAILERS AND PORTABLE BUILDINGS: All Contractor's onsite trailers and portable buildings shall be secured by tiedowns in a suitable manner as approved by the Contracting Officer, to insure their stability in storms an high winds prevalent in the particular geographical area, until removed fromthe worksite.

7 LAYDOWN/STORAGE AREAS: To clause entitled "CLEANING UP" of the Contract Clauses add the following: "The jobsite and laydown, storage and work areas shall be maintained in a neat, orderly condition on a continuing basis and shall comply with the standards of cleanliness and appearance regulating the Station. The continued

availability of all laydown, storage and work areas to the Contractor will be at the convenience of the Government and subject to strict compliance with Station cleanliness and appearance standards."

Storage trailers presently at the site cannot be utilized under this contract. The Contractor will unload all materials, equipment and supplies indicated as belonging to the Government for use in the project. The Government will arrange for removal of all trailers and other material, equipment and supplies which are not the property of the Government and consequently cannot be incorporated into the work of this contract.

8 COOPERATION WITH OTHER CONTRACTORS: Attention is invited to the fact that other contractors may be engaged in similar and supporting work requiring close cooperation. The Contractor shall cooperate and schedule his work to avoid conflict with an interruption of the work of others insofar as practicable. In the case of conflicts with other contractors that cannot be resolved satisfactorily, the matter shall be referred to the Contracting Officer for decision, and such decision shall be final, subject to right of appeal in accordance with terms of the contract.

9 NON OWNED MATERIAL: As a result of the default of the Original Contractor, there presently exists at the project site materials, supplies and equipment which is not owned by the Government. The Government will make every effort to remove or have removed this material, supplies and equipment prior to issuance of a Notice-to-Proceed. If however, the Government is unable to remove or have removed this material, supplies and equipment prior to the Contractor occupying the site, the Contractor may relocate same to laydown areas which will not interfere with his operations. The Contractor may not utilize any non Government owned material in the project. An inventory of Government owned material can be found elsewhere in this Technical Supplement.

10 SHOP DRAWINGS: The Contractor must provide specified shop drawings and other submittal data for all new products, materials, equipment or assemblies where required by the contract documents. The Contracting Officer has in his possession a copy of all submittals processed under the original contract. A copy of all submittals is also at the project site in storage in the original Contractor's field office. These will be made available to this Contractor upon request. These shop drawings are for information only and will not be acceptable toward satisfaction of submittal requirements under this contract.

*** END OF SECTION ***