**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CUMBERLAND CASUALTY & SURETY COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES**<br><br>**Defendant.** | ) | **No. 94-366C**<br>**(Judge Merow)** |

**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

COMES NOW, Plaintiff Cumberland Casualty & Surety Company, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, and submits its Proposed Findings of Uncontroverted Fact.

**Background**

1. In the fall of 1989, the United States Department of the Navy (the "Government"), through the Small Business Administration, awarded Contract No. N62467-88-C-0646 (the “Contract”) to AEC Corporation ("AEC") for the construction of a Naval and Marine Corps Reserve Training Center in Miami, Florida (the "Project”). [Complaint ¶ 4, attached hereto as Exhibit 1; Answer ¶ 4, attached hereto as Exhibit 2].

2. Pursuant to the terms and conditions of the Contract, AEC was required to provide payment and performance bonds for the Project. [Ex. 1 ¶ 5; Ex. 2 ¶ 5].

3. On or about August 16, 1989, Cumberland Casualty and Surety Company (“Cumberland”) issued the required bonds, pursuant to the Miller Act, 40 U.S.C. § 270 (a). [Ex. 1 ¶ 6; Ex. 2 ¶ 6].

4. AEC commenced performance of the Contract work on or about September 4, 1989. [Ex 1 ¶ 8; Ex. 2 ¶ 8].

5. On or about April 22, 1991, the Government terminated AEC's Contract for default. [Ex. 1 ¶ 9; Ex. 2 ¶ 9].

6. Upon termination, the Government made demand upon Cumberland, as surety, to complete the Project in accordance with the terms of the Performance Bond. [Ex. 1 ¶ 10; Ex. 2 ¶ 10].

7. On May 2, 1991, Cumberland entered into a Takeover Agreement with the Government for completion of the Project. [Ex. 1 ¶11; Ex. 2 ¶11].

8. Pursuant to the terms of the Takeover Agreement executed between Cumberland and the Government, as completing surety, Cumberland is entitled to all unpaid Contract balances and is equitably subrogated to all rights and claims of both the Government and AEC. [Takeover Agreement, attached hereto as Exhibit 3].

9. Accordingly, by the terms of the Takeover Agreement, which incorporates the Contract by reference, Cumberland agreed to complete the Contract work in accordance with the terms of the underlying Contract, conditioned upon payment of the Contract Balances, and among other things, upon an express reservation of AEC’s claims and defenses as set forth in the underlying Contract. [Ex. 3 ¶ 1].

10. Cumberland further reserved its rights to challenge the Government's set-off assessments against unpaid Contract Balances. [Ex. 3 ¶ 2b].

11. Cumberland completed the Contract work no later than October 1991 and the Government took beneficial occupancy by no later than October 9, 1991. [Ex. 1 ¶ 11; Ex. 2 ¶ 11;

November 20, 2002, Decision of the ASBCA in the AEC action, ¶ 25, attached hereto as Exhibit 4].

12. In completing performance of the Contract work, Cumberland incurred costs and damages well in excess of the amount withheld as liquidated damages. [Cumberland's Request for a Contracting Officer's Final Decision, attached hereto as Exhibit 5].

**Procedural History**

13. On May 9, 1991, AEC appealed the Contracting Officer's Final Decision terminating AEC for default to the ASBCA. [August 14, 1998, Decision of the ASBCA, at pg. 30, attached hereto as Exhibit 6].

14. The ASBCA conducted hearings on the matter in June of 1995 and the parties submitted Post-Trial briefs on or about December 20, 1995. [Ex. 4, ¶¶ 28, 29].

15. On August 14, 1998, the Board issued its decision (the "August 14, 1998 Decision") and concluded that the Government's default termination of AEC on April 22, 1991 was erroneous and converted the termination for default into termination for convenience of the Government. [Ex. 6, at pg. 47].

16. The Board ultimately found that because it could not be unequivocally established that AEC was unwilling or unable to perform the Contract, the termination was improper. [Ex. 6, at pg. 47].

17. The Board also ruled that AEC was entitled to time extensions as a result of delays for which the Government was responsible. [Ex. 6, at pg. 47].

18. Subsequently, the Government appealed the ASBCA's August 14, 1998 Decision to the United States Court of Appeals for the Federal Circuit, but only as to the issue of whether the default termination was proper, based on allegations that AEC anticipatorily repudiated the

Contract. [Secretary of the Navy's Appeal from the August 14, 1998 Decision of the ASBCA, attached hereto as Exhibit 7[1]].

19. The Government did not appeal the ASBCA's determination that AEC was entitled to time extensions based on delays that were attributable to the Government. [Ex. 7].

20. The United States Court of Appeals decision, while finding that the contractor anticipatorily repudiated the Contract, acknowledged but did not disturb the ASBCA's finding that the Government was responsible for 74 days of delay. [Decision of the United States Court of Appeals for the Federal Circuit, attached hereto as Exhibit 8].

21. On or about September 25, 2000, the United States Court of Appeals for the Federal Circuit remanded the case to the ASBCA for further proceedings. [Ex. 8].

22. On November 20, 2002, the ASBCA issued a subsequent decision which, among other things, confirmed its findings regarding AEC's entitlement to a time extension of not less than 74 days. [Ex. 4, at pg. 8].

**Cumberland's Lawsuit**

23. In the interim, while AEC prosecuted its appeal before the ASBCA, Cumberland, pursuant to the Takeover Agreement with the Government and its rights of equitable subrogation, submitted a certified claim to the Government for an equitable adjustment of the Contract price and compensable extensions of time, and requested a Contracting Officer's Final Decision. [Ex. 5].

24. Cumberland's claim included a demand for the return of the remaining unpaid Contract Balances, totaling approximately $419,068. [Ex. 5].

[1] Due to the voluminous nature of the Government's Appeal, only relevant portions have been excerpted as an exhibit.

25. On or about October 12, 1993, Cumberland received a Contracting Officer's Final Decision, denying the majority of its claims, including the remission of Contract Balances. [Contracting Officer's Final Decision, attached hereto as Exhibit 9].

26. As a result, Cumberland filed this action on or about June 3, 1994. [Ex. 1].

27. On or about July 3, 1997, the Parties filed a Joint Motion to Stay the instant Action, pending the resolution of the separate AEC action. [Order Staying Cumberland Action, attached hereto as Exhibit 10].

28. The Court granted the Parties' Motion on July 7, 1997. [Ex. 10].

29. Following the ASBCA's decision and the related appeal in the AEC action, as discussed above, this Court reopened fact discovery in the instant matter by order dated February 23, 2004. [Order re-opening fact discovery, attached hereto as Exhibit 11].

**<u>The Government's Withholding of Liquidated Damages</u>**

30. The Contract between AEC and the Government provides that the Government may assess liquidated damages for delays not attributable to the Government and for which no time extension is warranted. [Contract, § 01011, ¶ 5, attached hereto as Exhibit 12].[2]

31. The Contract provides:

> If the Contractor fails to complete the work within the time specified in the contract, or any extension, the Contractor shall pay to the Government as liquidated damages, the sum of $2,200 for each calendar day of delay.

[Ex. 12, ¶ 5].

32. Based on this liquidated damages provision, the Government assessed approximately $481,000 in liquidated damages against Cumberland as completing surety, for

[2] The Contract contains numerous terms and conditions, including many provisions incorporated from the Federal Acquisition Regulations. Only select portions of the Contract have been attached as Exhibit 14.

delays from March 3, 1991, the last contract completion date established by the Government, through October 9, 1991, the date upon which the Government concedes it took beneficial occupancy. [Ex. 4].

33. The Government withheld the remaining $419,068 in Contract Balances as liquidated damages and asserted a claim against Cumberland for the remainder of approximately $65,322. [Ex. 9].

34. In its August 14, 1998 Decision, the ASBCA ruled, among other things, that AEC was entitled to not less than a 74-day time extension for the period between March 3, 1991 through May 16, 1991, as a result of the delays attributable to the Government. [Ex. 4].

35. As such, the Government improperly withheld, at minimum, approximately $162,800.00 (74 days x $2,200.00/day) in liquidated damages, not including interest. [Ex. 4].

36. The Government has not remitted any portion of the Contract Balances withheld as liquidated damages to either AEC or Cumberland.

**Dated: December 21, 2007**

Respectfully submitted,

/s/Robert G. Watt

Robert G. Watt, Esquire
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
rwatt@wthf.com
Tel: (703) 749-1000
Fax: (703) 893-8029

Counsel for Plaintiff
Cumberland Casualty and Surety Company

**Certificate of Service**

I hereby certify under penalty of perjury that on this 30th day of January 2008, a true and correct copy of the foregoing Plaintiff's Proposed Findings of Uncontroverted Fact were served by the Court's electronic filing system, and were placed in the United States mail (first-class mail, postage paid) to the following:

Leslie Cayer Ohta, Trial Attorney
Civil Division
Department of Justice
Classification Unit/8th Floor
1100 L Street, NW
Washington, DC 20530

/s/ Robert G. Watt
Robert G. Watt