IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CUMBERLAND CASUALTY & SURETY COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **No. 94-366C** |
| | **(Judge Merow)** |
| **THE UNITED STATES** | |
| **Defendant.** | |

**PLAINTIFF CUMBERLAND CASUALTY AND SURETY COMPANY'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Respectfully Submitted By:

Robert G. Watt, Esq.
Vivian Katsantonis, Esq.
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, VA 22102
(703) 749-1000 Telephone
(703) 893-8029 Facsimile

Attorneys for Plaintiff Cumberland Casualty & Surety Company

March 24, 2008.

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. CUMBERLAND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW .......... 4

A. The Government Does Not Dispute that AEC Is Entitled to Time Extensions .......... 4

B. The Government Is Precluded from Relitigating the ASBCA's Unchallenged Findings Regarding AEC's Entitlement to Time Extensions .......... 6

1. The ASBCA's Unchallenged Findings of Fact Are Conclusive and Binding Under the Doctrine of Collateral Estoppel .......... 6

2. The Government's Discussion of the *Dodrill* and *Janicki* Decisions is Irrelevant .......... 14

C. The Government's Undisputed Responsibility for Delays Results in a Waiver of Its Right to Assess Liquidated Damages .......... 17

III. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## Federal Cases


Acacia Villa v. United States, 24 Cl. Ct. 445, 448, 452 (Cl. Ct. 1991) ........................................7

Acme Process Equip. v. United States, 347 F.2d 509, 535 (Ct. Cl. 1965) rev'd on other grounds 385 U.S. 138 (1966) ........................................18

Appeal of R.M. Cantrell & Sons, ASBCA No. 7680, 1962 WL 569 (1962) ........................................11

Astoria Fed. Sav. & Loan Assoc. v. Solimno, 501 U.S. 104, 107 (1991) ........................................7

Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 836 (Fed.Cir.1984) ........................................5

Bayou Land & Marine Contractors v. United States, 23 Cl. Ct. 764, 770 (Cl. Ct. 1991) ........................................5

Butler v. Eaton, 141 U.S. 240, 244 (1891) ........................................9

Chemetron Corp. v. Bus. Funds, Inc., 682 F.2d 1149, 1190, 1191 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983) ........................................8

Coath & Goss, Inc., v. United States, 101 Ct. Cl. 702 (Ct. Cl. 1944) ........................................18

Consol. Express, Inc. v. N.Y. Shipping Assoc., 641 F.2d 90 (3d Cir. 1981) ........................................9

Dodrill v. Ludt, 764 F.2d 442, 444 (6th Cir. 1985) ........................................10, 14

DWS, Inc. v. United States, 18 Cl. Ct. 453, 461 (1983) ........................................6

Estabrook v. United States, 41 Fed. Cl. 283, 290 (1998) ........................................10

Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 121, 122, 123, 124, 125, n.2 (1990) ........................................passim

Janicki Logging Co. v. United States, 36 Fed. Cl. 338 (Fed. Cl. 1996) ........................................15

Kaspar Wire Works, Inc. v. Leco Eng'g & Machine, Inc., 575 F.2d 530 (5th Cir. 1978) ........................................8

Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348, 1355 (4th Cir. 1987) ........................................9

Morganti Nat'l Inc. v. United States, 49 Fed. Cl. 110, 140 (2001) ........................................11

Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983) ........................................7

Nanninga v. Three Rivers Elec. Coop., 236 F.3d 902, 905 (8th Cir. 2000) ........................................9, 10

No East-West Highway Committee, Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985) ................9

Ornellas v. Oakley, 618 F.2d 1351, 1356 (9th Cir. 1980) ..........................................................9

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) ......................................................7, 8

PCL Constr. Servs. v. United States, 53 Fed. Cl. 479 (2002)................................................ ..17

Pontarelli Limo., Inc. v. City of Chicago, 929 F.3d 339, 340 (7th Cir. 1991).........................9, 10

Quarles v. Sager, 687 F.2d 344, 346 (11th Cir. 1982)................................................................9

Robinson v. United States, 57 Ct. Cl. 7 (1921) ......................................................................18

Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320 (Fed. Cir. 2003)................................................9

Savidge v. Fincannon, 836 F.2d 898, 906 (5th Cir. 1988)...........................................................9

Stone v. Williams, 970 F.2d 1043, 1055-56 (2d Cir. 1992) ...................................................9, 10

United States v. Lacey, 982 F.2d 410, 411 (10th Cir. 1992) .........................................................9

United States v. Newport News Shipbuilding and Dry Dock Co., 933 F.2d 996, 1000 (Fed. Cir. 1991)...........................................................................................................4

United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966) ......................................6

United States v. United Eng'g & Constructing Co., 234 U.S. 236, 241, 242 (1914) ..................17

U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 597, n.4 (Fed. Cir. 1995).............9, 10

Wolcott v. Ginsburg, 697 F. Supp. 540 (D.D.C. 1988) ..........................................................9, 10

Youngdale & Sons Constr. Co. v. United States, 27 Fed. Cl. 516 (1993)...................................17

**Federal Statutes**

FED. R. CIV. P. 56(e)(2)..............................................................................................................4

FED. R. CT. CL. 56(h)(2)..............................................................................................................5

# I. INTRODUCTION

The issue of AEC's entitlement to seventy-four (74) days of time extensions attributable to Government delays has been fully and fairly litigated by the Government. The Government had every opportunity to offer its evidence on this issue, which it presented in several forms including, among other things, testimony of its scheduling expert and other witnesses, at its hearing before the ASBCA. Upon full consideration of the evidence, the ASBCA resolved the issue, with finality, and specifically determined that AEC is entitled to no less than 74 days of time extensions. As previously noted in Plaintiff's opening Memorandum, these findings are set forth in the unappealed and undisturbed portions of the ASBCA's August 14, 1998 decision. While the Government subsequently had a full and fair opportunity to appeal the ASBCA's specific findings regarding AEC's entitlement to time extensions, it elected not to appeal those findings, and the time for such an appeal has long since expired.

Notwithstanding, in its Opposition to the instant Motion, the Government neither disputes the ASBCA's findings regarding AEC's entitlement to time extensions nor offers any evidence whatsoever from the record to dispute such findings. Rather, the Government merely argues that it must be afforded a fresh opportunity to relitigate all of the ASBCA's findings, as a procedural matter, in light of the Federal Circuit's ruling on appeal. In the relevant appellate decision, however, the Federal Circuit reversed only a singular and independent portion of the ASBCA's August 14, 1998 Decision while remanding the case to the ASBCA for further proceedings in accordance therewith.[1] Again, significantly, the Government did not challenge the ASBCA's

[1] Following the termination of AEC, Cumberland completed performance of AEC's Contract and succeeded to AEC's rights and claims against the Government, in addition to its own independent claims against the Government. The Government ultimately assessed all liquidated damages against Cumberland rather than AEC. Thus, in addition to Cumberland's separate claims, the remainder of the proceedings related to AEC's entitlement to time extensions, which

findings regarding AEC's entitlement to time extensions on appeal, and the Federal Circuit did not disturb such findings.

For its defense, the Government relies on an overly broad and simplistic application of one general principle regarding the doctrine of collateral estoppel—i.e., that a prior judgment has no preclusive effect to the extent it has been vacated. The Government simply ignores the fact that the Federal Circuit did not vacate or overturn the ASBCA's findings regarding AEC's entitlement to time extensions. Rather, the Government's erroneous argument is essentially that, by obtaining a favorable ruling on one aspect of its appeal, all of the ASBCA's findings are vacated and the Government is entitled to an indefinite amount of time to appeal and relitigate every finding previously made by the ASBCA, including those issues not timely challenged on appeal. If this were the law (which it is not), litigants would be allowed to reopen and retry every previously litigated and adjudicated issue in a case, regardless of whether timely preserved for appeal, simply by prevailing on the appeal of any one issue previously decided.

It is abundantly clear from the record that the Government's appeal in this case did not challenge the ASBCA's findings regarding AEC's entitlement to time extensions. Rather, the appeal sought only to overturn the ASBCA's determination that the Government's decision to terminate the contract for default was improper. In furtherance thereof, the Government argued two alternative grounds: (1) that the ASBCA applied an erroneous legal standard in determining that the Government's decision to terminate for delay was improper—specifically, because in evaluating whether the Government's decision was reasonable, the ASBCA credited AEC with the 74 days of time extensions that it had determined were due to AEC; and (2) that AEC had

---

is a defense to the assessment of liquidated damages against Cumberland, are presently being litigated before the instant Court because the ASBCA lacked jurisdiction over both Cumberland and Cumberland's claims for remission of liquidated damages against the Government.

anticipatorily breached its contract. Significantly, the appellate court expressly rejected the first of these two grounds, ruling that the ASBCA had applied the proper legal analysis in concluding that the Government's determination that AEC could not complete the contract within the allotted time was unreasonable. In doing so, the appellate court cited approvingly the ASBCA's use of a revised contract completion date, which credited AEC with the 74 days of time extensions that the ASBCA had determined were due to AEC, in evaluating the reasonableness of the Government's decision to terminate for delay. (See Plf. Appx. Ex. 8 pp. 100-101.) Thus, any contention by the Government that the Federal Circuit reversed the ASBCA's findings regarding AEC's entitlement to time extensions is erroneous and inconsistent with the appellate decision itself.

Moreover, the legal significance of the Government's failure to dispute the relevant findings of the ASBCA cannot be overstated. The "lynchpin" of Cumberland's instant Motion for partial Summary Judgment is not, as the Government suggests, as much an issue of collateral estoppel as it is the fact that there exists no further dispute regarding AEC's entitlement to substantial time extensions resulting from delays attributable to the Government. The law is clear that, where the Government fails to challenge the findings rendered by an administrative agency, such findings become conclusive in subsequent judicial proceedings. The Government's failure to dispute the ASBCA's findings of time extensions renders such findings conclusive.

As a result of the conclusive nature of the ASBCA's determination that AEC is entitled to substantial time extensions for delays attributable to the Government, it is undisputed that the Government is responsible, at least in part, for delaying performance beyond the contract completion date. The Contract provides no method for apportioning responsibility for such delays and the Government, in its Opposition brief, has provided no evidence of such a provision

or any other evidence that would enable or assist this Court in apportioning responsibility for delays in this case. Therefore, under the rule against apportionment, Cumberland is entitled to remission of all contract funds withheld as liquidated damages.

## II. CUMBERLAND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Based on AEC's undisputed entitlement to substantial time extensions, as conclusively established by the unchallenged findings of the ASBCA, Cumberland is entitled, as a matter of law, to full remission of all contract funds withheld as liquidated damages. The Government has conceded that there exists no genuine issue of material fact and has failed to raise any legitimate legal defense to overcome the instant Motion for Partial Summary Judgment. Accordingly, Cumberland's Motion should be granted.

### A. The Government Does Not Dispute that AEC Is Entitled to Time Extensions

The Government does not dispute Cumberland's Statement of Facts, including most significantly, the finding that AEC was entitled to substantial time extensions. Indeed, the Government correctly concedes that "there is no dispute over any issue of material fact" regarding Cumberland's instant Motion for Summary Judgment. (Gov't Opp'n Br. at 4.) Consistently, the Government has failed to provide any evidence whatsoever to dispute any of the facts set forth in Cumberland's Statement of Facts, as is required in order to raise a genuine issue of fact in opposition to a summary judgment motion. See Fed. R. Civ. P. 56(e)(2) ("[i]n order to overcome a properly made and supported motion for summary judgment, it is not enough to merely deny the moving party's allegations"); United States v. Newport News Shipbuilding and Dry Dock Co., 933 F.2d 996, 1000 (Fed. Cir. 1991) (holding that Government's non-specific, unsupported assertions in opposition to motion for summary judgment did not create a genuine issue of material fact so as to preclude award of summary

judgment); Bayou Land & Marine Contractors v. United States, 23 Cl. Ct. 764, 770 (Cl. Ct. 1991) ("The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.") (quoting Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)) Similarly, the Government has not provided an additional set of factual allegations or any evidence whatsoever (as would also be required under the applicable Rules) to support any contrary additional facts.[2] Accordingly, in resolving the instant Motion, Cumberland's Statement of Facts must be accepted for their truth and the Government's unsubstantiated and erroneous additional allegations must be ignored.

As set forth in Cumberland's initial Memorandum in support of the instant Motion, and as expressly admitted by the Government, under axiomatic principles of federal construction contracts law, the Government may not assess liquidated damages for alleged delays where AEC was entitled to time extensions. (Gov't Opp'n Br. at 9.) Consistently, the Government expressly admits that the Contract only allows for assessment of liquidated damages for "delays not attributable to the Government and for which no time extension is warranted." (Plf. PPF ¶ 30; Def. Resp. ¶ 30.) The Government further expressly admits that "[i]n its August 14, 1998 Decision the ASBCA ruled, among other things, that AEC was entitled to not less than a 74-day time extension…as a result of delays attributable to the Government" and that the Government's

[2] While the Government did not provide any separate statement of additional facts as required by Rule 56(h)(2) of the Rules of this Court, the "Factual Background" section of the Government's Opposition brief includes certain erroneous and unsubstantiated allegations. For example, the Government baldly alleges that AEC was liable for "inexcusable critical path delays." Under the applicable rules, such unsupported assertions must be given no weight or effect. Moreover, the Government's allegation is contrary to the undisputed facts. As the ASBCA ruled, which the Government concedes, AEC was entitled to time extensions due to Government changes and delays. Significantly, the Government offers no evidence whatsoever to dispute this finding.

corresponding withholding of $162,800 in liquidated damages was improper. (Plf. PPF ¶¶ 34-35; Def. Resp. ¶ 34-35.) The Government has offered no contrary legal authority nor any evidence whatsoever to dispute Plaintiff's evidence that AEC was entitled to time extensions. Because Cumberland is entitled to remission of contract funds wrongfully withheld as liquidated damages as a matter of law under the relevant undisputed facts, Cumberland's Motion should be granted.

**B. The Government Is Precluded from Relitigating the ASBCA's Unchallenged Findings Regarding AEC's Entitlement to Time Extensions**

The Government does not dispute the ASBCA's findings regarding AEC's entitlement to time extensions on the merits but rather attempts only to assert a procedural defense to application of the equitable doctrine of collateral estoppel. The authority relied upon by the Government in attempting to establish its procedural defense is inapplicable, however, to the instant situation, and the ASBCA's unchallenged findings are dispositive in this case.

1. The ASBCA's Unchallenged Findings of Fact Are Conclusive and Binding under the Doctrine of Collateral Estoppel

As noted in Plaintiff's opening Memorandum in support of the instant Motion,[3] under the doctrine of collateral estoppel, findings of fact issued by the ASBCA are given preclusive effect in subsequent judicial proceedings. Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 123 (1990) (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)) ("When an administrative agency acts in a judicial capacity and resolves issues of fact properly

[3] The Government disingenuously asserts that Cumberland cited no legal authority in support of its proposition that the Government is collaterally estopped from re-litigating undisturbed findings of fact rendered by the ASBCA. Apparently, the Government has simply ignored Cumberland's citation of such cases as United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966) and DWS, Inc. v. United States, 18 Cl. Ct. 453, 461 (1983). Based on the Government's failure to acknowledge and properly interpret such authority, the applicable law of collateral estoppel is further developed herein.

before it which the parties had an adequate opportunity to litigate, those findings are final and conclusive in a subsequent action between the same parties, if the subsequent action arises from the same facts.") Moreover, where the government fails to specifically and timely challenge the ASBCA's findings of fact, such findings will have collateral estoppel effect against the government in subsequent judicial proceedings. Ingalls Shipbuilding, 21 Cl. Ct. at 125.

The elements of collateral estoppel, or issue preclusion, are: (1) the issues to be concluded are identical to those involved in the prior action; (2) in that action, the issues raised were actually litigated; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the first action. Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983).

While the Government does not dispute the existence of any of these elements, it is important to note that the doctrine of collateral estoppel is not derived from any statute or constitution, but instead is a judicially created doctrine derived from the court's equitable powers. Acacia Villa v. United States, 24 Cl. Ct. 445, 448 (Cl. Ct. 1991). Therefore, the courts must consider issues of fairness and public policy in deciding whether to give prior judgments collateral estoppel effect. See Acacia, 24 Cl. Ct. at 452 (stating trial court has broad discretion to determine when collateral estoppel applies). In terms of public policy, the application of collateral estoppel is premised upon the "sound and obvious judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an [identical issue subsequently raised]." Astoria Fed. Sav. & Loan Assoc. v. Solimno, 501 U.S. 104, 107 (1991); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) (holding that "collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating identical issues with the same party or privy and of promoting judicial economy by preventing

needless litigation"). With respect to fairness, allowing such a losing litigant a "second bite at the apple" would unduly drain the resources of the judicial system and impose an unfair burden upon the party that worked to achieve a favorable result in the first instance. Id. Here, public policy and the equities favor application of the collateral estoppel to avoid relitigation of the undisputed prior findings of the ASBCA regarding AEC's entitlement to time extensions.

Indeed, the Government does not even dispute the merits of Cumberland's claim that it is entitled to remission of liquidated damages based on AEC's entitlement to such time extensions. Specifically, the Government does not deny or offer any evidence whatsoever to rebut the fact that AEC was entitled to substantial time extensions, as determined by the final and unchallenged ruling of the ASBCA. Instead, rather than provide any justification for its wrongful withholding of contract funds as alleged liquidated damages, the Government attempts to avoid entirely the fact of AEC's undisputed entitlement to time extensions by attempting to distract and focus the Court's attention on a procedural defense that is plainly inapplicable in this case. In this regard, the Government cites a litany of reported decisions to establish the general proposition that in order for a decision to have preclusive, collateral estoppel effect, it must be a final decision that must not have been vacated or overturned. (Opp'n 4-6.)[4]

This general rule, and the corresponding cases relied upon by the Government, are inapplicable to, and readily distinguishable from, the facts and circumstances of the instant case.

[4] While not included in the standard recital of elements of collateral estoppel, the requirement of a final judgment in res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, cases has been the subject of much analysis by the courts. Several courts have determined that the requirement of a final judgment is relaxed in the case of collateral estoppel. See, e.g., Chemetron Corp. v. Bus. Funds, Inc., 682 F.2d 1149, 1190 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983); Kaspar Wire Works, Inc. v. Leco Eng'g & Machine, Inc., 575 F.2d 530 (5th Cir. 1978). In addressing the issue of finality, courts have reasoned that collateral estoppel does not require a judgment which ends the litigation but rather includes many other dispositions where the "litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." Chemetron, 682 F.2d at 1190-91.

The Government's reliance on the cited string of decisions, most of which acknowledge only the general principle that a judgment that has been vacated or overturned loses its preclusive effect, is misplaced in that, among other things, the cited decisions address either (i) a judgment or order that had been fully vacated or overturned;[5] (ii) a specific portion of a prior judgment that had been vacated or overturned, which had preclusive effect as to the portion vacated or overturned, but not as to the undisturbed portions of the prior judgment;[6] and/or (iii) a prior court order that clearly had never become final.[7] Moreover, the Government's cited decisions do not involve a

---

[5] Butler v. Eaton, 141 U.S. 240, 244 (1891) (determining that the entire prior judgment sought to be given preclusive effect in subsequent action was entirely invalid at its foundation); U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 597 (Fed. Cir. 1995) (prior judgment was entirely vacated by approved settlement agreement between the parties); No East-West Highway Committee, Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985) (entire order relied upon had been expressly terminated and rescinded); Consol. Express, Inc. v. N.Y. Shipping Assoc., 641 F.2d 90 (3d Cir. 1981) (prior judgment had been entirely vacated); Dodrill v. Ludt, 764 F.2d 442, 444 (6th Cir. 1985) (entire prior judgment—a criminal conviction—had been reversed because statute upon which conviction was based was deemed unconstitutional); Pontarelli Limo., Inc. v. City of Chicago, 929 F.3d 339, 340 (7th Cir. 1991) (prior judgment was entirely vacated by approved settlement agreement between the parties); Nanninga v. Three Rivers Elec. Coop., 236 F.3d 902, 905 (8th Cir. 2000) (prior judgment entirely vacated because it applied wrong standard of care); Ornellas v. Oakley, 618 F.2d 1351, 1356 (9th Cir. 1980) (prior summary judgment had been entirely reversed); Quarles v. Sager, 687 F.2d 344, 346 (11th Cir. 1982) (although prior judgment had been entirely vacated, court rejected collateral estoppel argument on grounds that subsequent proceedings raised new issues not covered by prior vacated judgment); Wolcott v. Ginsburg, 697 F. Supp. 540 (D.D.C. 1988) (while prior judgment was entirely vacated, court recognized that valid reason could justify departure from general rule but denied preclusive effect, as matter of equity, because defendant's interest in subsequent proceedings were not adequately represented in prior proceedings)

[6] Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320 (Fed. Cir. 2003) (recognizing that only a portion of ASBCA's decision was vacated and emphasizing that the Board had unmistakably expressed its intent to vacate the portion of the decision subsequently relied upon); Stone v. Williams, 970 F.2d 1043, 1055-56 (2d Cir. 1992) (recognizing that, following remand, portions of decisions that are no longer appealable are "final" for purposes of issue preclusion); Savidge v. Fincannon, 836 F.2d 898, 906 (5th Cir. 1988) (denying preclusive effect to only the "parts of [the prior] decree" that were invalid because decided without adequate subject matter jurisdiction);

[7] Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348, 1355 (4th Cir. 1987) (recommendations of special master that were entirely vacated by the district court were not considered a final judgment); United States v. Lacey, 982 F.2d 410, 411 (10th Cir. 1992) (lower court had entirely

case, as is the situation here, where the subject prior findings of fact were unchallenged on appeal and clearly intended to be left undisturbed by the appellate court's decision.[8]

The Government's cases are inapplicable to the instant case in that, among other things, in this case, the appellate court did not fully reverse or overturn the ASBCA's August 14, 1998 Decision, which, as the Government does not dispute, was rendered as a final decision. More specifically, the Federal Circuit did not disturb the ASCBA's determination that AEC is entitled to the awarded time extensions. To the contrary, in expressly rejecting one of the Government's grounds for appeal, the Federal Circuit ruled that, in evaluating the propriety of the Government's decision to terminate AEC for delay, the ASBCA's consideration of the 74 days of time extensions, which the ASBCA had determined were due to AEC, was proper. Under these circumstances, it cannot be said that the ASBCA's findings regarding AEC's entitlement to time extensions were vacated, overturned or reversed on appeal. In fact, the Federal Circuit envisioned that AEC would be granted funds for the awarded time extensions by remanding the

---

set aside its own prior order relied upon); Estabrook v. United States, 41 Fed. Cl. 283, 290 (1998) (prior administrative adjudication had been rejected by the same administrative agency prior to attaining finality). See also, Footnote 4, supra.

[8] Additionally, while the Government represents that the collection of cited cases reflects an agreement by all federal circuits, it is worth noting that many of the cited decisions, each of which is independently distinguishable as noted in the previous footnotes, were decided as a matter of state law. See U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 598 n.4 (Fed. Cir. 1995) (noting that prior judgment decided under substantive Florida law would have no preclusive effect in subsequent matter to be decided as a matter of Illinois law); Stone v. Williams, 970 F.2d 1043, 1055-56 (2d Cir. 1992) (applying Alabama law); Dodrill v. Ludt, 764 F.2d 442, 444 (6th Cir. 1985) (applying Ohio law); Pontarelli Limo., Inc. v. City of Chicago, 929 F.3d 339, 340 (7th Cir. 1991) (applying Illinois law); Nanninga v. Three Rivers Elec. Coop., 236 F.3d 902, 905 (8th Cir. 2000) (applying Missouri law); Wolcott v. Ginsburg, 697 F. Supp. 540 (D.D.C. 1988) (prior vacated judgment involved Israeli decision of Supreme Court of Jerusalem).

case to the ASBCA as to all questions of liability, other than its limited holding that the default termination was proper by reason of anticipatory repudiation.[9] . (See Plf. Appx. Ex. 8 p. 108.)

Following remand, AEC requested the ASBCA to order the Government to remit the portion of contract balances withheld as liquidated damages corresponding to the 74 days of time extensions that the ASBCA had determined were due to AEC. The Government had actually assessed all liquidated damages against Cumberland, as completion contractor, however, rather than AEC. As a result, the ASBCA determined that, while its findings of time extensions survived the Federal Circuit's remand, the ASBCA lacked jurisdiction to rule on the claims for remission of such damages, in that, such claims properly belonged to Cumberland, which was not a party to the proceedings before the ASBCA. Thus, Cumberland seeks enforcement of the ASBCA's undisturbed findings in the instant proceeding as a partial offset against the total amount improperly withheld by the Government as liquidated damages. Because both the Federal Circuit and the ASBCA both envisioned further proceedings consistent with the ASBCA's findings, the Government's cases are plainly distinguishable.

Moreover, it is highly significant that the Government did not challenge the ASBCA's findings regarding AEC's entitlement to time extensions when it had the chance on appeal. See Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117 (1990). In Ingalls Shipbuilding, the former United States Claims Court confronted a set of circumstances that are remarkably analogous to the instant situation. In that case, the plaintiff attempted to recover additional costs, resulting from, among other things, government delays, under its contract with the government

[9] The law is clear that a contractor may recover for time extensions even after the propriety of the government's termination of the contractor for default has been upheld. Morganti Nat'l Inc. v. United States, 49 Fed. Cl. 110, 140 (2001); Appeal of R.M. Cantrell & Sons, ASBCA No. 7680, 1962 WL 569 (1962) (holding that contractor was entitled to time extensions notwithstanding determination that government's default termination was proper).

for the construction of a submarine. After a lengthy trial in which the contractual and delay issues were fully litigated, the ASBCA made extensive findings of fact, which included a determination that the government was liable for a substantial equitable adjustment. The government attempted to avoid enforcement of the ASBCA's judgment by, albeit unsuccessfully, pursuing a fraud claim in various federal courts. The government did not, however, make a timely appeal of the ASBCA's findings. The plaintiff was forced to seek enforcement of the ASBCA's findings in the Claims Court, and the government filed a counterclaim therein, alleging fraud and essentially disputing its liability for the equitable adjustment awarded by the ASBCA.[10]

The plaintiff thereafter prevailed before the Claims Court, both on a motion for discovery sanctions (based, in part, on the government's failure to specify which of the ASBCA's findings were plagued by fraud), which precluded the government from introducing evidence of fraud, and on a corresponding motion for partial summary judgment regarding the government's counterclaim, which motion was premised upon the ASBCA's findings of fact. The Federal Circuit reversed the decision of the Claims Court, holding that the discovery sanction, which effectively dismissed the government's fraud claim, could not be issued without a prior warning order. The case was remanded back to the Claims Court where plaintiff renewed its motion for summary judgment, again premised upon the ASBCA's findings of fact. The Claims Court was then required to decide whether to give collateral estoppel preclusive effect to the extensive factual findings of the ASBCA. The Claims Court determined that the ASBCA's findings, which had not been directly challenged by the government and which had been rendered after a

[10] Plaintiff's claims and the ASBCA's award predated the Contract Disputes Act, and under pre-act procedures, the plaintiff was allowed to seek enforcement of the ASBCA's award before the Court of Claims. (See Ingalls, 21 Cl. Ct. at 121 n.2)

full trial, constituted a final decision and had to be given preclusive effect under the doctrine of collateral estoppel. In accordance with that determination, the Claims Court concluded that the government could not prevail, as a matter of law, on its counterclaim in light of the ASBCA's conclusive and unchallenged findings, which essentially contradicted the counterclaim's allegations.

In reaching its conclusion, the Claims Court emphasized, among other things, that the government had failed to timely challenge the ASBCA's factual findings, when it instead had elected to defend against the awarded equitable adjustment on the basis of its fraud defense. With respect to the Government's failure to challenge the ASBCA's specific findings, the Claims Court determined that the "mere assertion, without more, that the government disagrees with the ASBCA's findings is no warrant for the court to set aside those findings." Id. at 122. The Claims Court repeatedly emphasized that the government had had a full and fair opportunity to litigate the findings, including by the presentation of witnesses, but had subsequently declined, at the appropriate time, to specify which findings it wanted to be reexamined. Id. at 123-24. Thus, the court ultimately granted the plaintiff's renewed summary judgment motion holding that, where the ASBCA's findings of fact are not challenged, they are given preclusive effect. Id. at 125.

Similarly, in the instant case, the Government failed to appeal or otherwise challenge the ASBCA's findings regarding AEC's entitlement to time extensions, after the Government had had a full and fair opportunity to litigate the issues of delay and time extensions, including the presentation of expert schedule analysis and witnesses. Any mere assertion by the Government, at this point, that it now disagrees with the ASBCA's findings of fact, nearly ten (10) years after the ASBCA issued such findings, is simply untimely. In accordance with the Ingalls decision, all

such unchallenged findings must be given preclusive effect in subsequent judicial proceedings, including the instant Motion for Partial Summary Judgment.

2. The Government's Discussion of the *Dodrill* and *Janicki* Decisions Is Irrelevant

It is telling that, in attempting to establish its hollow procedural defense, the Government principally relies upon a case that is not even remotely analogous to the instant situation. Specifically, the Government argues for the application of Dodrill v. Ludt, 764 F.2d 442, 444 (6th Cir. 1985), wherein the government attempted to introduce facts previously relied upon in obtaining a criminal conviction against a defendant to preclude the defendant from recovering under a subsequent civil suit against the arresting police officers. The prior criminal conviction had been entirely reversed and overturned based on a ruling that the statute upon which the defendant was criminally convicted was unconstitutional. Attempting to apply Ohio law to the issue, the Court of Appeals for the Sixth Circuit ruled that the "constitutionally based reversal" of the conviction presented "an unusual situation" that necessarily resulted in a wholesale reversal and vacatur of the judgment of conviction, including even those underlying findings of fact that were not specifically raised on appeal. In reaching this determination, the appellate court unmistakably emphasized that the wholesale reversal was based on constitutional grounds, which therefore resulted in the criminal conviction being "entirely vacated."

The Dodrill decision is quite inapplicable to, and distinguishable from, the present situation. Obviously, the instant case does not involve either a criminal conviction or the attempt to use findings from a criminal trial in a subsequent civil action, which necessarily involved entirely different issues, laws and procedures. The instant case also does not involve a prior decision that was "entirely vacated," much less entirely vacated upon constitutional grounds or,

more specifically, upon a determination that the law underlying the prior decision is unconstitutional. Additionally, the instant case is not to be decided as a matter of Ohio law.

The Government's reliance on Janicki Logging Co. v. United States, 36 Fed. Cl. 338 (Fed. Cl. 1996) is also misplaced. In Janicki, the plaintiff did appeal (as opposed to the Government, here) the portion of the decision it subsequently sought to litigate. Specifically, in that case, the United States Court of Federal Claims considered whether various issues resolved in a prior decision by the same court had preclusive effect in a subsequent case involving the same issues. In the first case, the court had ruled, among other things, that the complaint should be dismissed for lack of jurisdiction. The plaintiff appealed the dismissal for lack of jurisdiction as well as certain other determinations made by the trial court in the first case (the "non-jurisdictional determinations") to the Court of Appeals for the Federal Circuit. The Federal Circuit did not consider the appealed non-jurisdictional determinations but only the jurisdiction issue and summarily affirmed the dismissal on that ground alone. After circumstances changed such that there was no longer a jurisdictional bar, the plaintiff re-filed its complaint before the Court of Federal Claims.

The defendant argued that the plaintiff was precluded from re-filing its complaint based on certain of the non-jurisdictional determinations made by the lower court in the first case. In the second case, upon which the Government relies here, the Court of Federal Claims ruled that the non-jurisdictional determinations in the first case had no preclusive effect in the second case because the plaintiff had contested the non-jurisdictional determinations on appeal but the appellate court had not ruled upon those portions of the appeal, instead resting its judgment on the jurisdictional issue alone. The Court of Federal Claims refused to apply the doctrine of issue

preclusion in that context because the plaintiff would have otherwise been deprived of an opportunity to appeal the non-jurisdictional issues.

The rationale set forth in the Janicki decision is inapplicable to the instant situation in that, in this case, the Government, here, was not deprived of an opportunity to litigate and appeal the issue of AEC's entitlement to time extensions. In this case, the Government had the opportunity, but did not elect to, appeal the ASBCA's determination that AEC was entitled to no less than 74 days of time extensions, when it filed its appeal of the ASBCA's August 14, 1998 Decision. Rather, the Government essentially accepted that AEC was entitled to time extensions and, instead, argued that the default termination was nonetheless reasonable under the circumstances. Thus, it cannot be said, here, that the Government was deprived of an opportunity to challenge AEC's entitlement to time extensions. It simply chose not to challenge them. Thus, as in Ingalls Shipbuilding, supra, the Government's failure, during the time allotted for its appeal, to challenge the ASBCA's findings regarding AEC's entitlement to time extensions renders that portion of the ASBCA's August 14, 1998 Decision final for issue preclusion purposes.

Moreover, even if the Government's contention on appeal that the ASBCA applied an erroneous legal standard in evaluating the propriety of the default termination is tangentially related to the ASBCA's finding of AEC's entitlement to time extensions, the Federal Circuit expressly rejected that argument. Specifically, the Federal Circuit ruled that the ASBCA applied the proper standard in determining that the Government's decision to terminate AEC's contract for delay was unreasonable. In reaching that conclusion, the Federal Circuit cited approvingly the ASBCA's use of a revised completion date, which accounted for the 74 days of time extension awarded by the ASBCA, to evaluate the propriety of Government's decision to

terminate for delay. (See Plf. Appx. Ex. 8 pp. 100-101.) Thus, to the extent the issue of AEC's entitlement to time extensions was raised and addressed by the Federal Circuit, the related findings by the ASBCA were given effect and incorporated into the appellate decision. There is nothing in the Federal Circuit's decision, in contrast, to indicate that such findings were intended to be reversed or vacated.

### C. The Government's Undisputed Responsibility for Delays Results in a Waiver of Its Right to Assess Liquidated Damages

As set forth in Cumberland's initial Memorandum in support of the instant Motion, and the cases cited therein, where the Government is responsible for delaying the completion of contract work, the Government waives its right to enforce the contract's liquidated damages for delay provision, particularly where, as here, the contract provides no method for apportioning delays. See e.g., United States v. United Eng'g & Constructing Co., 234 U.S. 236 (1914); Youngdale & Sons Constr. Co. v. United States, 27 Fed. Cl. 516 (1993); PCL Constr. Servs. v. United States, 53 Fed. Cl. 479 (2002).[11] This rule of waiver results from the courts' reluctance to

[11] The Government's attempt to distinguish and undermine the ruling in United Engineering, supra, is improper. In United Engineering, the court applied the general rule against apportionment to a case wherein, as here, the government was responsible, at least in part, for delaying performance of the work beyond the contract completion date. The Government unjustifiably attempts to limit the holding of United Engineering by arguing that the rule against apportionment only applies where the government alone was responsible for the delays that extended performance beyond the completion date. Contrary to the Government's argument, however, the rule against apportionment has been applied in circumstances where the Government is responsible for some, but not all delays during, and not necessarily after, the original contract time expired. See e.g., Youngdale & Sons Constr. Co. v. United States, PCL Constr. Servs. v. United States, supra. Moreover, in United Engineering, the Court stated that the rule against apportionment would be applied even though the work might be delayed, in part, by the contractor, so long as the government was responsible for some of the delay that extended performance beyond the completion date. 234 U.S. at 241-42. Here, the ASBCA determined that AEC was entitled to a substantial extension of the contract completion date because of delays attributable to the Government. The rule against apportionment therefore applies in that the Government clearly was responsible for delaying performance beyond the contract completion date.

apportion responsibility for delay, particularly where the underlying contract provides no method for apportioning delays. See Acme Process Equip. v. United States, 347 F.2d 509, 535 (Ct. Cl. 1965) rev'd on other grounds 385 U.S. 138 (1966). In its Opposition brief, the Government fails to cite any authority that would invalidate this established rule that the government's responsibility for delays that extend performance beyond the completion date result in a waiver of any right to assess liquidated damages.

Instead, the Government attempts to avoid this rule of waiver by citing a number of factually inapposite cases. Specifically, the Government argues for the application of a different rule, arguing that this Court should attempt to apportion responsibility for delays between the parties. In support of this argument, the Government principally relies upon Robinson v. United States, 57 Ct. Cl. 7 (1921). That case is readily distinguishable from the facts of the instant case, however, in that, in Robinson, the contract clearly provided a method for apportioning responsibility for delays between the Government and the contractor and the court determined that responsibility for such delays in that case could be easily apportioned between the parties.

In the instant case, the contract between AEC and the Government does not include a contract provision providing for the apportionment of delays, and the Government has failed to cite any such contract provision. Moreover, the Government has failed to provide any factual or other evidentiary support that would enable the Court to apportion responsibility for delays in this case. Accordingly, the Robinson decision is inapplicable, and the rule against apportionment should be applied.

The Government also relies upon Coath & Goss, Inc., v. United States, 101 Ct. Cl. 702 (Ct. Cl. 1944), which is similarly distinguishable from the present case. In Coath, the court held, among other things, that the contractor could not recover damages for delays because the

contractor failed to submit evidence establishing Government responsibility for delays. The Coath decision is clearly inapplicable to the facts of the instant case in that, here, Government liability for delays has already been conclusively established by the prior decision of the ASBCA. In light of the Government's undisputed responsibility for substantial delays, which, under the undisturbed portions of the ASBCA's August 14, 1998 Decision, delayed contract performance beyond the completion date by no less than 74 days, the liquidated damages provision has been waived, and the Government's withholding of contract balances as liquidated damages is improper.

Because the Government has failed to cite any contractual provision or other evidence that would enable or assist this Court in apportioning responsibility for delays in this case, the Court should apply the rule against apportionment and issue judgment, as a matter of law, that (i) the Government has waived the contractual liquidated damages provision; and (ii) Cumberland is entitled to the remission of all contract balances withheld by the Government as liquidated damages.

Alternatively, even if the Court determines that the delays in this case are, in fact, apportionable, Cumberland is entitled, at minimum, to the remission of the portion of contract funds withheld as liquidated damages corresponding to the 74 days of times extensions already granted to AEC by decision of the ASBCA. As set forth above, the Government never appealed this finding of the ASBCA and therefore is precluded from doing so. Quite tellingly, the Government has not offered anything to dispute AEC's entitlement to such time extensions. Therefore, Cumberland is presently entitled, at minimum, to remission of the corresponding amount of contract funds improperly withheld by the Government as liquidated damages.

## III. CONCLUSION

The issue of AEC's entitlement to time extensions attributable to Government delays has been fully and fairly litigated by the Government, and upon full consideration of the evidence, the ASBCA resolved the issue, with finality, specifically determining that AEC is entitled to no less than seventy-four (74) days of time extensions. While the Government subsequently had a full and fair opportunity to appeal the ASBCA's specific findings regarding AEC's entitlement to time extensions, it elected not to appeal those findings, and the time for such an appeal has long since expired. Because these findings are conclusive, the Government is required at this time, as a matter of law, to remit the contract balances improperly withheld as liquidated damages to Cumberland.

Under the rule against apportionment, the Government's undisputed responsibility for delaying the project beyond the completion date, which supplies the basis for AEC's entitlement to time extensions, results in a waiver of the liquidated damages provision, and therefore, the Government must remit all contract funds withheld as liquidated damages. Alternatively, at minimum, the Government must, at this time, remit the portion of liquidated damages corresponding to AEC's 74 days of time extensions.

Respectfully submitted,

s/Robert G. Watt

Robert G. Watt, Esquire
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
rwatt@wthf.com
Tel: (703) 749-1000
Fax: (703) 893-8029

Counsel for Plaintiff
Cumberland Casualty and Surety Company

**Certificate of Service**

I hereby certify under penalty of perjury that on this 24th day of March 2008, a true and correct copy of the foregoing Plaintiff Cumberland Casualty and Surety Company's Reply in Support of Motion for Partial Summary Judgment was served by the Court's electronic filing system, and was placed in the United States mail (first-class mail, postage paid) to the following:

Leslie Cayer Ohta, Trial Attorney
Civil Division
Department of Justice
Classification Unit/8th Floor
1100 L Street, NW
Washington, DC 20530

/s Robert G. Watt
Robert G. Watt