# In the United States Court of Federal Claims

No. 94-366 C
(Filed July 3, 2008)

***********************************
CUMBERLAND CASUALTY & SURETY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.
***********************************

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter concerns a May 1989 Small Business Administration contract between the Navy and AEC Corporation ("AEC") for the construction of a Navy and Marine Corps Reserve Training Center in Miami, Florida for a fixed-price of $4,361,631.[1/] Work was to commence on June 22, 1989, and be completed by October 14, 1990, later extended to March 3, 1991. The Navy complained about slow performance; AEC claimed defective specifications, poor workmanship by the prior contractor and delays and interference by the government. The Navy terminated the contract for default on April 22, 1991. On May 9, 1991, AEC appealed the default termination to the Armed Services Board of Contract Appeals ("ASBCA"). Cumberland completed the contract pursuant to its performance bond and a Takeover Agreement with the Navy executed on May 2, 1991.

---

[1/] Before entering the contract with AEC, the Navy terminated the contract with a prior contractor for default. Under its contract, AEC was to complete a two-story building of approximately 55,000 square feet and construct a 5,800 square foot vehicle maintenance training facility as well as site improvements, including an underground fire line around the perimeter of the main building, referred to as a fire loop.

In September of 1992, Cumberland filed claims with the Navy for equitable adjustments, time extensions and approximately $419,068 [$416,477.42] in contract funds retained for liquidated damages assessed for delays both prior and subsequent to AEC's termination and Cumberland's takeover. The contracting officer denied the majority of the claims.

Cumberland filed this action on June 3, 1994. The parties requested, and the court granted, numerous stays pending the resolution of AEC's appeal to the ASBCA. The stay was subsequently lifted by order of February 23, 2004. Numerous extensions of discovery were granted following the appointment of a receiver for Cumberland in state court proceedings in Florida.

Meanwhile, on January 29, 1993, the ASBCA denied Cumberland's motion to intervene in AEC's appeal. *Appeal of AEC Corp.*, ASBCA No. 42920, 93-2 B.C.A. (CCH) ¶ 25,793, 1993 WL 34561 (Jan. 29, 1993). A twelve-day hearing on AEC's appeal was held in June of 1995; post-trial briefs were filed in December of 1995. On August 14, 1998,[2] in a forty-eight page decision, the ASBCA found the Navy's default termination was improper and converted the termination to one for convenience. *Appeal of AEC Corp.*, ASBCA No. 42920, 98-2 B.C.A. (CCH) ¶ 29,952, 1998 WL 525796 (Aug. 14, 1998). The Board noted that "[i]n attacking the propriety of the default termination, [AEC], among other things, contends that it was entitled to time extensions due to Navy actions and omissions regarding certain construction items under the contract." 98-2 B.C.A. ¶ 29,952, at 41. The Board concluded that because of government delays, AEC was entitled to an extension of the contract completion date to May 16, 1991. *Id.* at 43. Construing the contract's default clause, the Board concluded: "[t]he Navy has presented no evidence that AEC could not complete contract performance by the extended contract completion date produced by an appropriate analysis of the time extensions to which AEC is entitled. We conclude that the Navy's default termination for failure to make progress was improper." *Id.* at 44. The Board rejected the Navy's claims of anticipatory repudiation and abandonment, concluding:

[2] The Board's Decision on the propriety of the Navy's default termination is Exhibit 6 to the Appendix filed in this case on December 21, 2007 in support of Cumberland's Motion for Partial Summary Judgment.

> We have determined that [AEC] was entitled to contract time extensions to 16 May 1991. The Navy terminated the contract for default on 22 April 1991, and the evidence includes no analysis that [AEC] would not have been able to complete performance by 16 May 1991. The default termination was, therefore, erroneous.
>
> The termination for default was improper and is converted into a termination for convenience.

*Id*. at 47.

In denying the government's motion for reconsideration, the ASBCA summarized its prior determination. "[W]e decided that the termination for default was improper and converted it into a termination for convenience. In reaching that decision, we concluded that, as a result of Navy actions or omissions, [AEC] was entitled to contract time extensions beyond the date upon which the Navy terminated the contract." *Appeal of AEC Corp*., ASBCA No. 42920, 99-1 B.C.A. (CCH) ¶ 30,181, 1998 WL 883200 (Dec. 11, 1998). Among arguments made in support of reconsideration, the government had claimed error in rejecting its position that AEC had anticipatorily repudiated the contract.

The government appealed to the Federal Circuit, arguing that the Board erred in analyzing the Navy's termination decision based on extensions of time not then granted. Rather, the government argued, the decision to terminate for lack of progress must be measured against the contract completion date, at that time March 3, 1991, not May 16, 1991, a date determined by the ASBCA much later. The government's opening brief framed the issue:

> **STATEMENT OF THE ISSUE**
>
> Whether the Armed Services Board of Contract Appeals incorrectly vacated the United States Navy's default termination of a fixed-price construction contract by failing to assess the reasonableness of the Navy's decision in the context of the appropriate time period.

## STATEMENT OF THE CASE

> I. Nature Of The Case
> Appellant, the United States Navy, appeals from a decision of the Armed Services Board of Contract Appeals that overturned the default termination of appellee, AEC Corporation. The board determined AEC was entitled to time extensions beyond the date of termination. The board held that because the Navy had not analyzed whether AEC could complete the project by the extended completion date, its termination of AEC for failure to make progress was improper. However, the board improperly required the Navy to analyze a completion date that did not exist prior to the board's decision, instead of the completion date to which both parties agreed. The board failed to consider that, due to financial constraints imposed by its surety it was clear AEC could not complete the project by the date promised, and that AEC admitted at the time of default it was doubtful it would ever be able to complete it.

Br. of Appellant, *Danzig v. AEC Corp*., No. 99-1343 (Fed. Cir. Sept. 13, 1999), 1999 WL 33612488, at *1-2 .

The government focused on AEC's slow pace, reduction in work force, removal of contract files and office equipment and AEC's statement that due to financial stringencies imposed on AEC by Cumberland, "we cannot give you any assurance as to when the project will be completed." *Id*. at *7. Also cited was testimony of a critical path methodology expert that in April of 1991, based on then-current staffing levels, substantial completion would take at least four months and with no money to pay subcontractors, "I can't imagine how anybody would concede that the project is going to go anywhere from there. I mean, there's no cash." *Id.* at *12.

The government also contended that default termination was justified because, when asked, AEC failed to give adequate assurances it could complete the contract and the Board's time-extension findings were not supported by substantial evidence. *Id*. at *17 n.6.

In its brief to the Federal Circuit, AEC countered that the ASBCA properly determined time extensions due the contractor prior to terminating for default, citing

FAR 52.249-10,[3/] and pointing out that the government did not appeal from the Board's finding of entitlement to those time extensions, findings that were supported by substantial evidence. Brief of Appellee, *Danzig v. AEC Corp.*, No. 99-1343 (Fed. Cir. Dec. 6, 1999), 1999 WL 33631597 at *13. The contracting officer did not find repudiation and the government's argument was assertedly an attempt at revisionist history. In any event, a finding of anticipatory repudiation requires a clear refusal to perform or an unequivocal expression of inability to perform, and the Board concluded, based on its review of an extensive record, that "the actions of AEC were 'far from an unequivocal expression of an unwillingness or inability to perform.'" *Id.* at *14.

In replying to AEC's argument on appeal that the Navy did not appeal from the Board's determinations of periods of delay, the government retorted in its Reply brief to the Federal Circuit:

> That is untrue. In our initial brief, we plainly argued that the board's time extension analysis was not supported by substantial evidence and, in particular, the board's finding of a 30-day time extension for electrical receptacle work and associated drywall delays constituted reversible error.

Reply Br. of Appellant, *Danzig v. AEC Corp.*, No. 99-1343 (Fed. Cir. Feb. 17, 2000), 2000 WL 33981045, at *10. The government's argument continued that, regardless of whether the agreed-upon completion date was April 27th or May 16th, "the board was obligated to employ a failure to make progress analysis to determine whether the contracting officer was reasonable in his belief that there was no reasonable likelihood that AEC could complete the project in the time remaining for performance." *Id.* at *12. Regardless of the completion date, AEC failed to give the Navy any assurance of completion or respond to concerns about lack of progress, ceased productive work after April 17th, and complained it was in a financial straightjacket at the hands of its surety and doubted the contract would be completed in time. In these circumstances, termination for failure to progress was appropriate

[3/] That section, governing fixed-price construction contracts, provides in relevant part for termination: "[i]f the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract **including any extension**, . . ." 48 C.F.R. 52.249-10(a) (emphasis supplied).

the Navy argued, citing *Universal Fiberglass Corp. v. United States*, 210 Ct. Cl. 206, 537 F.2d 393 (1976), *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1326 (Fed. Cir. 1999), *Discount Co. v. United States*, 213 Ct. Cl. 567, 554 F.2d 435 (1977) and *Hannon Electric Co. v. United States*, 31 Fed. Cl. 135 (1994), *aff'd*, 52 F.3d 343 (Fed. Cir. 1995) (table). *Id*. at *13-22. Inability to demonstrate capability of performance was anticipatory repudiation which also justified the termination the Navy concluded, citing *Herlo Corp*., ASBCA Nos. 19,198, 19,419-26, 77-2 B.C.A. (CCH) ¶ 12,820, at 62,409, 62,410 (Sept. 30, 1977) and *Cascade Pacific International v. United States*, 773 F.2d 287, 293 (Fed. Cir. 1985). *Id*. at 25-28.

The Federal Circuit agreed with one of the government's alternative arguments – that in response to the Navy's March 20, 1991 cure notice, AEC failed to give adequate assurances that it could timely complete the contract or continue to progress towards completion. The Federal Circuit concluded that as a matter of law, AEC's responses to the Navy's justifiable concern about its performance were inadequate, justifying the Navy's termination for default. AEC's progress was slow and the Navy was concerned that AEC would not be able to timely complete the contract. Demand was made that unless that condition was remedied, the Navy would consider default termination. AEC stated it could make no assurances when the work would be completed and complained of financial strangulation by the surety. Only two supervisory employees remained at the job site. On April 9, 1991, the Navy gave AEC ten days to show cause why the contract should not be terminated, yet, in the following ten days, AEC had only a handful of workers on the job site. The Navy's April 22, 1991 termination letter stated the contract was being terminated "'due to failure to make progress in the work and for default in performance.'" *Danzig v. AEC Corp*., 224 F.3d 1333, 1336 (Fed. Cir. 2000). Reversing the Board's decision invalidating the termination, the matter was remanded to the Board to "address the remaining issues of liability based on our holding that the default termination was valid." 224 F.3d at 1340.

On remand, AEC presented its claim for liquidated damages for the time extensions previously granted by the Board for the period from March 3, 1991 through May 16, 1991 (74 days at $2,200 per day = $162,800). Finding this claim had not been submitted to the contracting officer, the Board granted the government's motion to dismiss.

> [AEC's] affirmative money claims must be dismissed. The dismissal is without prejudice to the proper submission of such claims to the contracting officer. It would be premature for us to rule on whether our previous ruling on time extensions would bind the parties under law of the case, collateral estoppel, or some other theory.

*Appeal of AEC Corp.*, ASBCA No. 42920, 03-1 B.C.A. (CCH) ¶ 32,071, 2002 WL 31648240 (Nov. 20, 2002). However, the Board reaffirmed its finding that the Navy was responsible for seventy-four days of delay.

Liquidated damages, including this disputed period, were assessed against Cumberland under its Takeover Agreement. The ASBCA's remand decision noted it had not been presented with authority allowing it to pass on the propriety of liquidated damages assessed against a non-party under a different contract, matters that should be decided by this court. *Id.* Cumberland's Partial Motion for Summary Judgment seeks the remission of those liquidated damages.

**DISCUSSION**[4/]

Cumberland has moved for partial summary judgment, asserting that, based on undisputed facts, as a matter of law, it is entitled to the remission of contract balances improperly retained as liquidated damages for delay. The Motion asserts (1) there is no factual dispute that the government is liable for not less than seventy-four days of delay; and (2) the government withheld approximately $419,068 [$416,477.42] in contract balances which included sums for the seventy-four days delay period the ASBCA decision attributed to the Navy. Plaintiff also asserts that because the government was responsible for periods of delay and there is no basis in the contract for apportionment, the Navy's right to assess any liquidated damages was waived. Total liquidated damages for delay equal $419,068, representing 219 days of delay, which includes the seventy-four day period comprising $162,800 of the total sum withheld. Plaintiff also seeks interest on any recovery, measured from November 8, 1991.

[4/] The parties have been unable to agree on a date for oral argument on this motion. The court deems oral argument unnecessary.

Summary judgment is warranted where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

As set forth by the Federal Circuit, if certain criteria are met, issues resolved in prior proceedings are precluded from relitigation in subsequent proceedings. The principle is discussed in *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003) as follows:

> Under the doctrine of issue preclusion, "a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (citations omitted). Issue preclusion is generally appropriate if: (1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action. *Id.*; *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000).

(parenthetical in original). *See also Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003).

"Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090 (Fed. Cir. 1984) (citing *Mother's Restaurants, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983)). "Generally, the doctrine of issue preclusion will prevent a party from relitigating an issue that the party has already litigated and lost." 18 James W. Moore, *Moore's Federal Practice* § 132.01[2] (3d ed. 2008). The Supreme Court described the derivation and purpose of collateral estoppel as follows:

> Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. Collateral estoppel . . . serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

*United States v. Mendoza*, 464 U.S. 154, 158 (1984) (citations omitted) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Arkla, Inc. v. United States*, 37 F.3d 621, 623 (Fed. Cir. 1994).

Collateral estoppel applies with no less force to the findings of administrative bodies such as the ASBCA. Issue preclusion applies not only to court judgments but also "to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).

Defendant argues that the initial finding by the ASBCA that the Navy was liable for seventy-four days of delay is simply not "final" for collateral estoppel purposes, because it was not included in any appellate affirmation in a significant and essential way. "As is evident in this appeal, the process is not final nor are the claim construction issues resolved when this court has construed the claims in some ways differently from the commendable work done by the trial court." *Innovad, Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001). *See also C.W. Over & Sons, Inc. v. United States*, 48 Fed. Cl. 342, 347 (2000) (citing *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991)). The Board's factual finding that the Navy was responsible for seventy-four days of delay was not a part of, much less a "necessary" part of the Federal Circuit's reversal of the Board's termination decision. *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003) (including as requisites for collateral estoppel that "the resolution of the issue was essential to a final judgment in the first action"). "'When a judgment is based upon alternative grounds or multiple grounds, and on appeal it is affirmed on only one ground, without reaching the others, only the issue reached on appeal is a basis for collateral estoppel.'" *Janicki Logging Co. v. United States*, 36 Fed. Cl. 338, 340 (1996) (numerous citations omitted), *aff'd*, 124 F.3d 226 (Fed. Cir. 1997) (table).

In these circumstances, the rejected ASBCA decision cannot serve to preclude litigation, in this case, addressed to AEC's (Cumberland's) entitlement to an extension of time to complete the contract beyond the termination date, or to the resulting impact on the assessment of liquidated damages and recovery of withheld sums.

Plaintiff argues that defendant has not raised any genuine issues of material fact in response to the Motion for Partial Summary Judgment. However, absent the ASBCA's decision, which was reversed on appeal, plaintiff has not otherwise adequately supported its motion so as to establish prima facie entitlement to the time extension(s) sought and resulting remission of liquidated damages. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Absent a properly supported motion, defendant's obligation to raise genuine factual issues to avoid summary judgment does not arise. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

On the assumption that it had established that some retention of liquidated damages was not justified, in that a portion of the delay was government-caused, plaintiff argues that in the absence of a basis for apportionment, defendant has waived its right to assess any liquidated damages. If it were assumed that some government-caused delay could be established, this issue would involve a total of $419,068 in liquidated damages for delays from March 3, 1991, the agreed-upon completion date according to the government, through October 9, 1991, the date the government concedes it took beneficial occupancy.

On this assumption, Cumberland asserts entitlement to the entire $419,068 [$416,477.42] in contract balances retained for assessed liquidated damages. Cumberland cites *United States v. United States Engineering & Contracting Co.*, 234 U.S. 236, 242 (1914) which concluded that the government waived its ability to rely on the contract completion date, and consequent liquidated damages, because of delays, some caused by the contractor, some by the government. This so-called rule against apportionment of liquidated damages was also applied in *Acme Process Equip. v. United States*, 171 Ct. Cl. 324, 347 F.2d 509, 535 (Ct. Cl. 1965), *rev'd on other grounds*, 385 U.S. 138 (1966). As the court there stated: "[w]here delays are caused by both parties to the contract the court will not attempt to apportion them, but will simply hold that the provisions of the contract with reference to liquidated damages will be annulled."

Cumberland also cites *Youngdale & Sons Construction Co. v. United States*, 27 Fed. Cl. 516 (1993). In *Youngdale*, the government was responsible, at least in part, for delays in the project due to excessive groundwater, but contended contractor-caused delays were the primary cause. Rather than parsing responsibility for delays, "the fact that the government caused the delay with respect to the excess water condition negates the applicability of the liquidated damages clause contained in the contract, and thereby prevents the government from assessing any amount with respect to liquidated damages." 27 Fed. Cl. at 565. The viability of this rule against apportionment was recognized most recently in *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 479, 487 (2002) Cumberland adds.

Disagreeing with Cumberland's position that responsibility for some delay equates into responsibility for all delay as a matter of law, the government insists that when responsibility (for delay and resultant damages) can be apportioned or segregated, it is, citing *Sauer Inc. v. Danzig*, 224 F.3d 1340 (Fed. Cir. 2000) and *Essex Electro Engineers v. Danzig*, 224 F.3d 1283 (Fed. Cir. 2000), both recent Federal Circuit cases in which liquidated damages for delay were parsed by responsibility. In *Essex*, the Federal Circuit cited with approval *Coath & Goss, Inc. v. United States*, 101 Ct. Cl. 702 (1944), and concluded that respective responsibility for segmented periods of delays could be segregated and so could liquidated damages. Similarly, in *Sauer Inc. v. Danzig*, 224 F.3d 1340 (Fed. Cir. 2000), the Federal Circuit affirmed the conclusion of the ASBCA that the contractor established that only two days of delay were government-caused, and "[a]s a result, Sauer has not shown that it is entitled to a remission of liquidated damages greater than the remission already granted by the Board." 224 F.3d at 1347.

In Reply, Cumberland retorts that the contract here has no method for apportioning responsibility and the government has not offered any mechanism, citing *Acme Process Equip. v. United States*, 347 F.2d 509, 535 (Ct. Cl. 1965), *rev'd on other grounds*, 385 U.S. 138 (1966). The government's reliance on *Robinson v. United States*, 57 Ct. Cl. 7 (1921), *aff'd*, 261 U.S. 486 (1923) is inapt, Cumberland asserts, because the contract in *Robinson* "clearly provided a method for apportioning responsibility for delays between the Government and the contractor and the court determined that responsibility for such delays in that case could be easily apportioned between the parties." (Reply at 18.) The contract in *Robinson* provided that the contractor "shall be allowed one day, additional to the time herein stated, for each and every day of delay" caused by the government. 261 U.S. at 487. And, Cumberland

adds, in *Coath*, the contractor did not submit any evidence that the government was responsible for delays, where, in contrast, here it is asserted that the government's responsibility for delay (at least for the seventy-four days of delay) has been initially resolved by the ASBCA.

Whether the rule is against any apportionment of liquidated damages if the government bears at least some responsibility, or whether apportionment is allowed in appropriate cases either under contract terms or otherwise, has been described as "unsettled." *Sunshine Constr. & Eng'g, Inc. v. United States*, 64 Fed. Cl. 346, 372 (2005) (agreeing with the analysis of *R.P. Wallace, Inc. v. United States*, 63 Fed. Cl. 402, 409-12 (2004) and apportioning sequential delay). *See also George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 243-44 (2005) (discussing without resolving conflicting authorities and concluding the result in that case would be the same regardless of whether apportionment was prohibited or permitted) and *PCL Constr. Servs. v. United States*, 53 Fed. Cl. 479, 486 (2002) (describing apportionment of liquidated damages in the Federal Circuit as "unsettled" but concluding that the government could not assess liquidated damages regardless of which rule applied).

"[W]here both parties contribute to a delay neither can recover damage[s], unless there is in the proof a clear apportionment of the delay and the expense attributable to each party.'" *Sauer Inc.*, 224 F.3d at 1347. Concurrent delays "occur[] where both parties are responsible for the same period of delay, the second where one party and then the other cause different delays *seriatim* or intermittently." *R.P. Wallace, Inc. v. United States*, 63 Fed. Cl. 402, 409-10 (2004) (citing *Electro Eng'rs v. Danzig*, 224 F.3d 1283, 1295-96 (Fed. Cir. 2000) (distinguishing concurrent and sequential delays)). If delay is concurrent, apportionment of liability may be impossible, where in the latter, responsibility may be easily demarcated. For example, if both the government's late approval of plans and the contractor's delay in ordering material postponed the start of construction by two weeks, responsibility may be concurrent and responsibility simply not apportionable. But if later the government delayed the contractor's ability to build an access road to a project because it failed to timely approve its location or the specifications of the underlying aggregate base, and that period of delay necessarily postponed delivery of building materials to a job site which, in turn, led to a separate or sequential delay in the construction schedule of that building, that period would fall into a second, separate,

sequential non-overlapping delay for which the government would be solely responsible.

Here, responsibility for delay has not been resolved. There may be multiple delaying events, liability for which could be isolated and segregated and causation and duration separately determined. It could be that each party's delay is inherently apportionable and measurable by non-overlapping days such that resultant financial responsibility would be a simple application of the contractual daily rate times the number of days to determine liability. It is clear that material factual issues remain for resolution.

As the Federal Circuit explained "a contractor cannot recover 'where the delays are "concurrent or intertwined" and the contractor has not met its burden of separating its delays from those chargeable to the Government.'" *Essex Electro Eng'rs*, 224 F.3d at 1292 (citing *Blinderman Constr. Co. v. United States*, 695 F.2d 552, 559 (Fed. Cir. 1982)). "Nevertheless, if 'there is in the proof a clear apportionment of the delay and the expense attributable to each party,' then the government will be liable for its delays." *Id*. (citing *Coath & Goss, Inc. v. United States*, 101 Ct. Cl. 702, 714-15 (1944)).

Accordingly, as plaintiff has not established entitlement to partial summary judgment and genuine issues of fact exist with respect to delay causation and liquidated damage assessments, it is **ORDERED** that plaintiff's motion, filed December 21, 2007, is **DENIED** without prejudice to any renewal with appropriate supporting material, at a later date.[5/]

s/James F. Merow
James F. Merow
Senior Judge

[5/] Given the prior extensive consideration of the delay issue by the ASBCA, counsel are encouraged to reach agreement and stipulate to the use in this litigation of relevant portions of the record before the ASBCA to avoid, to the extent feasible, duplicative proceedings.